# Morton's Estate.

*Orphans' court—Jurisdiction—Advisory jurisdiction.*

The advisory jurisdiction of the English court of chancery has never been adopted or conferred upon the courts of equity or orphans' courts of Pennsylvania.

The orphans' court has no jurisdiction to entertain a petition by a trustee for advice and instructions as to what interest certain parties named have in the income of the trust estate. The proper way to raise such a question is to cite the trustee to account, when the trustee may either dispute the petitioner's right to an account or he may file an account and resist the petitioner's claim to any share of the fund in court.

Argued Nov. 1, 1901. Appeal, No. 108, Oct. T., 1901, by Mercantile Trust Company, guardian of Francis M. Longdon, minor child of Birdella M. Longdon, deceased, from decree of O. C. Allegheny Co., April T., 1896, No. 186, in the matter of petition for advice and instructions in the estate of Andrew Morton, deceased. Before McCollum, C. J., Mitchell, Fell, Brown, Mestrezat and Porter, JJ. Reversed.

Petition of Francis J. Longdon, Jr., for decree instructing a trustee to pay the income of his deceased wife's share to him as tenant by the curtesy.

The pertinent facts are stated in the opinion of the Supreme Court.

*Error assigned* was decree of the court.

*A. M. Imbrie,* with him *W. H. S. Thomson,* for appellant.

*W. R. Errett,* for appellee.

OPINION BY MR. JUSTICE MITCHELL, January 6, 1902:

This decree must be reversed for want of jurisdiction in the court below. There was no case before it for adjudication.

The facts so far as now pertinent may be stated as follows: Andrew Morton, the testator, devised land in trust for his four children to continue as long as any one survived, and the share of any child dying, leaving issue, to be paid to his, or her children. A son died leaving a daughter, Mary McKinney, who died in 1896 leaving a husband and children, the latter being thus the great grandchildren of the testator. Thereupon the trustee filed a petition for advice and instruction what if any interest the great grandchildren, and their father as surviving husband of a grandchild had in the income of the trust estate. The latter question, however, it is now claimed was taken out of the case by an assignment of the husband's rights whatever they might be to the guardian of his children. The court decreed that the trustee petitioner should pay the McKinney children their mother's share of the income.

In 1901, Mrs. Longdon, another daughter of the same son, having died leaving a husband and children, the husband filed a petition for instruction to the trustee to pay the income of her share to him as tenant by the curtesy. The court so decreed and these appeals are from that decree.

It will be perceived that both decrees were made under what is known as the advisory jurisdiction of chancery, and did not distribute any income or other fund accrued and in court, but upon a construction of the will directed the trustee what it required him to do in the future.

This advisory jurisdiction has never been adopted or conferred upon the courts of Pennsylvania. It was held by our predecessors in the early days of our courts that equitable

principles are part of the common law of the state. This extension of the vital principle of the common law that enables it to adapt itself to the ever varying conduct of mankind and their affairs was the greatest achievement in modern jurisprudence, antedating as it did by a century, the similar action of England and some of the other states of the union. But the early judges were not iconoclasts, nor sciolists of the modern school of reform. Their action was to build up, not to tear down or destroy. They adopted equitable principles, but without disturbing the ancient landmarks of the law. They let in the changes called for by progressive improvement at every point where they had a real and living place of usefulness, but in the absence of a court of chancery they wrought them into the fabric of the law as it was, and administered them with admirable ingenuity through common-law forms. When the same change was made in England it was expressed in the fundamental rule that where a legal principle and an equitable principle come in conflict in any case, the equitable principle shall prevail without reference to the court in which the matter arises. This is a clear and compendious formulation of the principle under which, for example, the courts of this state had for a century and more, allowed a common-law plea " with leave to give special matter in evidence " to open the door to any equitable defense.

But admirable as these devices were they were inadequate to the requirements of the complicated business of modern times, and when the early prejudice against a court of chancery had measurably died out, chancery jurisdiction, including remedies and process, was introduced directly by statute. And a statutory basis is required for all jurisdiction and proceedings which cannot be sustained on the general principles of equity as adopted and administered through the forms of the common law.

The advisory jurisdiction of chancery as to the construction of wills in general, and more specifically with reference to trusts is discussed and the authorities collected in 2 Am. & Eng. Decisions in Equity, p. 687, in a note by Mr. Stewart of the Philadelphia Bar to the case of Crosson v. Dwyer, 9 Texas Civil Appeals Rep. 482 ; and also in 3 Pomeroy on Equity Jurisprudence (ed. 1892), sec. 1156. The conclusion to be drawn from

the authorities is that where the jurisdiction is recognized it is usually by virtue of express statute.

The Act of June 16, 1836, P. L. 789, gave the courts of common pleas, "the jurisdiction and powers of a court of chancery, so far as relates to . . . . the control removal and discharge of trustees, and the appointment of trustees and the settlement of their accounts." But neither this nor any subsequent act has been held to include the advisory powers of the English chancery even in courts of general equity jurisdiction, which the orphans' court is not: Wimmer's Appeal, 1 Whart. 96; Ake & Feay's Appeal, 74 Pa. 116; Miller's Est., 159 Pa. 562. In Willard's Appeal, 65 Pa. 265, it was expressly held that the orphans' court has no authority to make a decree on a bill praying for a declaration of the rights of parties under a will, SHARSWOOD, J., saying: "It would, perhaps, be a very convenient practice immediately upon the death of a decedent to have all possible questions which might arise upon the construction of his will, and in the settlement and distribution of his estate, settled by a decree of the orphans' court in limine, and by way of anticipation, and by an appeal to the Supreme Court from such a decree, have a final and conclusive determination of the subject. It would certainly save counsel a great deal of responsibility in giving advice. But the acts of assembly which confer jurisdiction on the orphans' court, may be searched in vain for any such power. Without authority so derived we must say that the decree below or in this court on appeal would be inconclusive and possibly a snare. It would not be binding upon any of the parties; certainly not upon those of them not sui juris. Consent cannot give jurisdiction. Any opinion which we should express upon the proper construction of this will in this appeal would be merely extrajudicial."

And in Tyson's Est., 191 Pa. 218, it was said: "It is quite true that the courts of Pennsylvania have no jurisdiction to declare the construction of a will and rights under it by way of advice in limine, and without adverse litigants actually before them. It is not desirable that they should have. Notwithstanding some convenience, as remarked by SHARSWOOD, J., in Willard's Appeal, 65 Pa. 265, such practice would be contrary to the whole fundamental theory of our law under which courts do not advise but decide, and for decision there must

be an actual contest. No man and no court can foresee the state of facts that may occur in the future, and ex facto oritur jus. In no class of cases is this truer than in those arising under wills. It is the unexpected, the condition of facts unforeseen, and therefore unprovided for, that gives rise to most of such litigation. And no judge can have failed to observe, not only in will cases, but in all others, how the knowledge and self-interest of parties actually contending for success conduces to precision and accuracy in the judicial result. Hence the very noticeable fact that with all the disadvantages of inexperience, want of learning, etc., on the part of counsel that sometimes embarrass a case, it is only in the rarest of instances that the true ground of determination fails to be developed in the argument. Nothing sharpens the wits for the presentation of every possible view like the interest of opposing parties dealing with known facts in a genuine contest for victory. It is that which gives the superior value to the decision of a court of even moderate ability, over the ex parte opinions of the most learned and experienced counsel."

These decisions are express authority against the practice followed in this case. It is the business of counsel to advise and of courts to decide. The ordinary and regular way to raise the question desired to be determined in this proceeding is to cite the trustee to account, and the trustee may either dispute the petitioner's right to an account or he may file an account and resist the petitioner's claim to any share in the fund in court. In either case there will be before the court a lis mota, adverse parties in an actual present contest which the court will be in position to determine.

Decree reversed and petition directed to be dismissed.