# Kimberly's Estate (No. 2).

*Jurisdiction, Orphans' Court—Decedents' estates—Wills—Residue—Setting aside portion of residue to meet legacies—Construction.*

1. The Orphans' Court has jurisdiction to settle the accounts of testamentary trustees and to supervise the distribution of the assets belonging to such estates, according to the appropriate general rules of law as well as the law established by the will in each particular case.

2. A testator bequeathed 23 per cent. of his estate to trustees with direction for the payment of certain legacies and annuities and provided that "after providing for the payment of the legacies and bequests......herein specifically above mentioned, the aforesaid trustees and executors, for charitable purposes, shall use and apply the rest, residue and remainder of said 23 per cent. of my said estate, so as aforesaid given to them in trust and they are hereby authorized, empowered and directed to use and apply the same to such charitable uses, objects and purposes as they may from time to time select, or deem most desirable, hereby giving to them the full and absolute power to select and apply the whole of said rest, residue and remainder of said 23 per cent. so to be received, to charitable uses, objects and purposes, as fully and completely as I myself could do if living." The trustees having been awarded 23 per cent. of the estate petitioned the Orphans' Court for leave to set aside certain specified bonds which had already been "designated and alloted by them to provide for the payment of the respective specific bequests" and that they might distribute the balance of the residuary estate for charitable purposes. One of the legatees demurred to the petition on the ground that the estate must be kept in the hands of the trustees intact until all the annuity legatees had received their legacies. The attorney general filed an answer alleging that the amounts set aside for the payment of the legacies were excessive. The court overruled the demurrer and held the answer insufficient and granted the prayer of the petition. *Held,* that while the practice of petitioning the court for leave to set aside the securities was open to criticism, yet as it appeared in fact that the securities designated in the petition had actually been set aside, and that the Orphans' Court had not in fact exercised an advisory jurisdiction but had passed upon the action of the trustees in a proceeding which had been contested by a legatee and by the attorney general, the objection that the

court had no jurisdiction was without merit and that the trustees in setting aside the securities had carried out the directions of the will, and the decree was affirmed.

Argued March 3, 1915. Appeal, No. 113, Oct. T., 1914, by Abner Rush, annuitant legatee, from decree of O. C. Mercer Co., Oct. T., 1912, No. 60, granting petition of trustees for leave to distribute certain assets in estate of Peter L. Kimberly, deceased. Before MESTREZAT, POTTER, ELKIN, MOSCHZISKER and FRAZER, JJ. Affirmed.

Petition for leave to distribute certain assets bequeathed to trustees by Peter L. Kimberly, deceased. Before WILLIAMS, P. J.

The opinion of the Supreme Court states the facts.

The court granted the petition. Abner Rush appealed.

*Error assigned* was the decree of the court.

*William McElwee, Jr.,* with him *W. D. Wallace,* for appellant.

*Harry Rubens,* of *Rubens, Fischer & Mosser,* with him *James P. Whitla,* for appellees.

OPINION BY MR. JUSTICE MOSCHZISKER, May 17, 1915:

Peter L. Kimberly died in June, 1905, possessed of a large estate, which he disposed of by will, the first section of the first paragraph whereof provides, inter alia, as follows: "I will, devise and bequeath all my property and estate......to John C. Owsley, ......Ira B. Bassett, ......and George A. Baird, ......; they to have and hold the same, to themselves and their successors or successor as trustees and executors upon the trusts and for the uses and purposes and subject to and under the directions following, that is to say; ......" The provision just quoted is followed by six other sections in which extensive powers and wide discretion are vested

in the executors and trustees. In the second paragraph of the will, the testator gave his executors and trustees, for purposes of distribution, seventy-seven per centum of his estate, and named numerous devisees, with the exact proportion to be received by each. The "executors" distributed the full seventy-seven per centum accordingly; their accounts concerning that part of the estate were confirmed absolutely, and, all debts of the decedent and claims allowed against his estate having been paid, the executors were "legally discharged" as such.

The proceeding now under review concerns only the remaining twenty-three per centum of the testator's estate; this is covered by the third paragraph of his will, wherein he provided: "To my said trustees and executors, John C. Owsley, Ira B. Bassett and George A. Baird, the remainder or twenty-three per cent. (23 per cent.) of the whole of my said estate: In Trust, nevertheless, for the following purposes": here follows section "No. 1," containing five gifts, or "legacies," in the nature of annuities, aggregating $500 per month, and one bequest of $5,000; then the will proceeds thus: "After providing for the payment of the legacies and bequests in (section) No. 1 of this paragraph......, herein specifically above mentioned, the aforesaid trustees and executors, for charitable purposes, shall use and apply the rest, residue and remainder of said twenty-three per cent. (23 per cent.) of my said estate, so as aforesaid given to them in trust, and they are hereby authorized, empowered and directed to use and apply the same, to such charitable uses, objects and purposes, as they may from time to time select or deem most desirable; hereby giving to them the full and absolute power to select and apply the whole of said rest, residue and remainder of said twenty-three per cent. (23 per cent.) so to be received, to charitable uses, objects and purposes, as fully and completely as I myself could do if living......"
The bequest of $5,000 was paid in full, and one of the legatees, to whom the trustees were directed to pay $50

per month, died prior to the present proceeding; the remaining gifts to the other legatees named in section No. 1 of the third paragraph of the will are still in full force and payments thereon are being made each month, the total sum required for this purpose being $450 per month, or $5,400 per year.

The trustees filed a partial account of their stewardship, and thereupon presented a petition to the Orphans' Court setting forth the fact that they held twenty-three per centum of the testator's estate in trust under the third paragraph of his will, and that, in their opinion, the amount on hand was largely in excess of that required to pay the bequest and legacies contained in the paragraph in question; they prayed the court to direct the setting aside of certain specified municipal bonds, which already had been "designated and allotted by them to provide for the payment of the respective specific bequests mentioned in the third paragraph of said last will," and further prayed that they might distribute the balance of the residuary estate for charitable purposes, as provided in testator's will, "free and clear from all liability of every kind to pay or provide for the payment of the specific bequests made and mentioned in the third paragraph of said last will and testatment." On the presentation of this petition, all persons in interest were commanded to appear and show cause why the prayers thereof should not be granted. In response the attorney general of Pennsylvania filed an answer in which, after admitting the main allegations of the petition, he averred that the several blocks of securities set aside to provide for payment of legacies were excessive in amount. In addition, a demurrer was filed by Abner Rush, one of the legatees mentioned in section No. 1 of the third paragraph of the will, to the effect that "under the terms of said will of Peter L. Kimberly, deceased, the said trustees have no authority to set aside any part of said estate for the purposes set forth in the above mentioned petition, but must hold and keep said estate now

in their hands intact and undivided until all the annuitant legatees named in said paragraph 3 of said last will have died and have received the full amount of each and every of their respective specific legacies and bequests thereunder."

After hearing, and consideration of the petition and demurrer, the court below entered a decree as follows: "The demurrer to said petition is overruled, and the answer thereto being deemed insufficient, the prayer of said petition is granted and the court now approves and confirms the action of said testamentary trustees in setting apart certain assets......for the purpose of providing for the payment of the special bequests in the form of monthly allowances or payments to certain persons named in said will, viz": here follows an enumeration of high grade municipal bonds totaling $20,000 in par value, after which the decree proceeds: "The principal and income of the particular bonds thus set apart for each of the said legatees......shall be kept in a separate and independent fund, and no part of such fund, either principal or income, shall at any time be diverted to any other purpose than the payment of the particular bequest for which it has been set apart as herein provided, until after the death of the particular legatee, and the payment in full of his or her legacy, or the further order of this court. All of the remaining assets in the hands and under the control of the said testamentary trustee, not set apart for special bequests as herein provided, are now hereby released and discharged from......any liability whatever for the payment of said special bequests or any of them; to the end that the said testamentary trustees may at any time hereafter, in the exercise of the powers and discretion given to them by said last will and testament, dispose of and dispense the said remaining assets in accordance with the terms and provisions of the said last will and testament, outside of and without regard to the said special bequests above mentioned." The before men-

tioned legatee has appealed. He contends that "the court below erred in assuming jurisdiction of the case ......; in finding that the trustees had authority under the will to release part of the property from the charge of the annuities......; in assuming......to advise the trustees as to the extent of their powers under the will"; and, generally, in entering the above quoted decree.

The Orphans' Court has jurisdiction to settle the accounts of testamentary trustees, and to supervise the distribution of assets belonging to such estates, according to the appropriate general rules of law, as well as the law established by the will in each particular case. Here, the third paragraph of the will of Peter L. Kimberly, deceased, is the controlling law of the case before us, and thereunder the trustees are specifically directed to provide for the payment of the legacies and bequests mentioned in section No. 1 thereof, and after so "providing," to "use and apply," meaning to distribute (see Kimberly Est., No. 1), the remainder of the residuary estate "so as aforesaid given to them in trust." The paragraph in question does not state that, after payment of the legacies mentioned in Sec. No. 1, the trustees are to apply, or distribute, the remainder of the twenty-three per centum held in trust by them, but the phrasing is, "after providing for the payment of the legacies, etc.," the trustees "shall use and apply, etc." We construe the provision under consideration to mean that the trustees are directed to provide for securing the monthly payments mentioned in Sec. No. 1 of the paragraph in question, and, within a reasonable time, to distribute for charitable uses, according to their best judgment, the balance of the residuary estate; the assets segregated as security for the aforesaid monthly payments gradually to be released for charitable distribution as the decease of the several legatees, for whose benefit they were set aside, occurs. In providing for these payments, however, the trustees followed the practice indicated by the Act of February 23, 1853, P. L. 98, relating to the exoneration

of residuary real estate from liability for annuities, instead of formally setting aside the securities necessary for the purpose, showing this fact in their account and having the propriety of their action determined on exceptions thereto. While the practice pursued below may be open to criticism, yet, we are not convinced that it constitutes reversible error in this case. As already indicated, the trustees had the right and were obligated to set aside securities sufficient to insure the payment of the legacies provided for in section No. 1 of paragraph 3, and, by plain implication, under the will before us, when they segregated such securities the balance of the residuary estate became exonerated from any charge or liability accruing from such legacies; this being so, no harm was done by the terms of the decree.

This is the situation: the trustees had filed an account and were about to distribute part of the funds of the trust estate, but, before so doing, they segregated certain designated assets to provide for the payment of the before mentioned legacies; the decree in terms recognizes this fact and "approves and affirms the action of the said testamentary trustees in setting apart certain assets . . . . . . for the purpose of providing for the payment of the special bequests, etc." The setting aside of these assets was, in practical effect, a supplement to the account then pending before the court; when the fact of their segregation was thus placed of record, one of the legatees mentioned in Sec. No. 1 of paragraph 3 promptly challenged the right of the trustees in the premises, saying that the whole fund in their hands had to remain as security for his and other similar legacies. On the other hand, the attorney general, representing the State in its relation to the charities provided for in the testator's will, contended that the fund set aside was unnecessarily large in amount, and, therefore, encroached upon the charity fund which otherwise would be immediately available for distribution; thus there was a lis mota as to the right to set aside the fund in question

and concerning the amount proper for the purpose in
view, and this controversy, until settled, stood in the
way of the distribution of the estate provided for in the
will, hence, the Orphans' Court was the proper tribunal
to determine the issues involved. The fact that, in stat-
ing its determination, the court below incidentally de-
clared that the effect of the exercise of the right and
duty vested in and put upon the trustees, to provide for
the payment of the legacies, was to exonerate the other
securities in their hands, in no sense harms the appellant,
nor, under the circumstances at bar, does it represent
the exercise of forbidden advisory jurisdiction.

All the questions directly or incidentally passed upon
by the court below in the proceedings now before us,
were, in fact, raised by the appellant as an exceptant to
the account of the trustees, and, as previously suggested,
could have been determined on an appeal from the over-
ruling of his exceptions; but since they have been
brought before us on this appeal, and since we find no
harmful error, while not approving the practice pursued,
we fail to see, under the peculiar facts at bar, that any
useful purpose would be served by sending the case back
for another appeal.

The present case is sufficiently different on its facts
from Willard's App., 65 Pa. 265; Morton's Est., 201 Pa.
269; Jacoby's Est., 201 Pa. 442; Archambault's Est.
(No. 1), 232 Pa. 344, and other authorities relied upon
by the appellant, to be readily distinguishable. No case
has been cited which rules the one now before us, but the
following contain enlightening matter on some points
of jurisdiction discussed by counsel: Barklay's Est., 10
Pa. 387, 390; Brown's App., 12 Pa. 333, 336-7; Dickin-
son's Est., 148 Pa. 142; Watts Est., 158 Pa. 1, 13; Cutler's
Est., 225 Pa. 167, 170. In Henderson's Est., 228 Pa. 405,
the will directed trustees to pay a legatee $25 per month
for life, "to keep sufficient funds invested therefor," and,
in case of sickness, if this was not sufficient for his
maintenance, to pay such additional sum as in their

judgment might be necessary. In that case the trustees filed an account showing a balance of $41,000; whereupon, the Orphans' Court directed $15,000 thereof to be invested for the protection of the annuitant, and the balance to be distributed. On appeal, we held that, since no intention could be gathered from the will to hold the whole estate together to protect the annuitant, the necessary "implication" was that the balance should be distributed, adding: "the amount to be retained was a matter to be determined by the judge of the Orphans' Court, and nothing short of a clear abuse of discretion would induce an appellate court to disturb his findings."

In the present case there does not seem to be any suggestion that the securities set aside for the protection of the appellant, or those segregated for other like legatees, were insufficient for the purpose in view, and, in point of fact, such a contention could not properly be sustained. So far as the record before us shows, the attorney general did not attempt to press by appeal his contention that the securities set aside were excessive in amount. On the whole, after a careful review of this record, we find no reversible error.

The decree is affirmed; the costs to be paid out of the testator's residuary estate.