## Duff's Estate.

*Declaratory judgments—Jurisdiction, O. C.—Uniform Declaratory Judgments Act of June 18, 1923.*

1. The Uniform Declaratory Judgments Act of June 18, 1923, P. L. 840, contemplates the solution of a real controversy between adverse parties, and the courts are not required to answer abstract propositions of law or moot questions which are merely academic.

2. The act does not confer on the courts jurisdiction to advise fiduciaries in the discharge of their duties.

3. The act does not operate where the evil intended to be remedied does not exist.

4. The act does not extend, or in any wise affect, the jurisdiction of the Orphans' Court, so as to bring within it cases, or a class of cases, not previously cognizable there; hence, where the court was asked to enter a declaratory judgment touching the validity of a lease, which depended upon whether or not a testamentary power of appointment had been properly exercised, it declined jurisdiction, as the validity of the lease was a matter to be determined by the Common Pleas, whose jurisdiction would not be affected by the fact that its validity would depend upon whether the power had been properly exercised.

5. Where the court in which the petition is filed is without power to enforce the declaratory judgment sought, it may refuse to enter it under section 6 of the act, as such judgment if entered would not terminate the controversy.

Petition and answers. O. C. Phila. Co., Jan. T., 1884, No. 484.

*Conlen, Acker, Manning & Brown* and *James Arthur Ewing*, for petitioner.

*William J. Conlen*, Special Deputy Attorney-General, for Commonwealth, *amicus curiæ*.

*Sheldon F. Potter*, for Robert and Mary Davison.

*Tustin & Wesley*, for Blanche H. Reed, Dorothy Reed and Helen Reed.

*John Hemphill*, for Achille Olivieri, contra.

GEST, J., April 4, 1924.—This is a petition by the substituted trustee, under the will of Catharine A. Duff, praying the court to declare the rights and legal relations of all parties in interest respecting certain real estate of the late Catharine A. Duff, No. 129 North 15th Street, under the provisions of the Act of June 18, 1923, P. L. 840, known as the Uniform Declaratory Judgments Act.

It appears from the pleadings that Catharine A. Duff, being so seised of the real estate in question, died in 1882, leaving a husband and a daughter, Catharine A. Duff, Jr., and by her will devised all her estate to her executor, in trust to permit her husband to receive the rent of the real estate for his life, and after his death (which occurred in 1888), in trust for the same uses as she declared with respect to her personal estate, and in trust as to her personal and mixed estate, to pay the income to her daughter Catharine for life, and at her death, for the use of such persons or person as her said daughter might by her last will, attested by two witnesses, give, devise, limit or appoint, and in default of appointment, then to the children and issue of her daughter. The will contained no remainder over in default of issue. Catharine A. Duff, Jr., in 1915, executed a lease of the premises in question to Achille Olivieri for a term of ten years, beginning Feb. 1, 1916, at $30 a month, and after five years, at $40 a month, the lease containing an option in favor of the tenant to purchase the property for $20,000. Catharine A. Duff, Jr., died in 1920, unmarried and without issue, leaving a will, attested by two witnesses, in which she gave numerous specific and pecuniary legacies, and without referring to her power of appointment under her mother's will, mentioned

premises No. 129 North 15th Street in terms of individual or personal owner-ship, reaffirmed the lease and option to purchase, and provided that if the tenant should purchase it at $20,000, the proceeds should be paid and distrib-uted in a certain manner. By a codicil, unwitnessed, the testatrix declared her will to be in exercise of the power of appointment granted under her mother's will, appointed executors and trustees, and gave them the power to sell her real estate. The will contained no general residuary bequest or devise. Achille Olivieri is now in possession of real estate under the lease, and while he has not formally exercised his option to purchase, has indicated through his counsel his intention to do so before the expiration of the lease on Feb. 1, 1926.

The petition for a declaratory judgment propounds the following questions to the court:

(a) What title or estate did Catharine A. Duff, Jr., have in said premises, to wit, No. 129 North 15th Street, Philadelphia?

(b) Has Catharine A. Duff, Jr., properly exercised the power of appoint-ment given her by the will of her mother, Catharine A. Duff, Sr., and if so,

(c) In whose favor has the said Catharine A. Duff, Jr., appointed said premises?

(d) Is the lease of said premises to Achille Olivieri, and the option con-tained therein, valid and binding on the heirs of either Catharine A. Duff, Sr., or Catharine A. Duff, Jr.?

(e) Has Achille Olivieri, the said tenant, any right of possession to said premises or any estate therein?

(f) In what class of persons, either devisees, heirs or next of kin of either Catharine A. Duff, Jr., or Catharine A. Duff, Sr., is the title to said premises now vested?

To this petition several answers were filed. The answer of Olivieri origi-nally raised several objections to the constitutionality of the Act of June 18, 1923, P. L. 840, and the argument at the first hearing of the case was confined to this point. Subsequently the associate counsel for the petitioner entered an appearance for the Commonwealth and filed a learned and elaborate brief as Special Deputy Attorney-General. We do not think that the Attorney-General is at all concerned in the case, as the 11th section of the act, referring to him, confines his interest to cases that involve the validity of a municipal ordinance or franchise which is alleged to be unconstitutional, but we have considered the learned counsel as acting simply as amicus curiæ, and, need-less to say, it gave the court great pleasure to listen to his argument in that capacity. However, at the second argument of the case, counsel for Olivieri withdrew his objections to the constitutionality of the act, and, as we are of opinion that the petition should be dismissed for other reasons, it is not necessary for us to consider that question, so that in what follows we assume its constitutionality.

The Uniform Declaratory Judgments Act is an innovation in our jurispru-dence, as heretofore it has always been considered requisite in our legal pro-cedure that the courts should be called upon to decide only those questions which arise in actual litigation. The legislature, however, in its last session, has adopted this Uniform Declaratory Judgments Act, which follows similar procedure or identical acts in some foreign jurisdictions and in several states of this Union. And we note that in sections 12 and 15 the legislature, having declared its purpose to be remedial, has enjoined the courts to construe and administer the act liberally and to interpret and construe it so as to effectuate its general purpose, viz., to make uniform the law of those states which enact

4 D. & C.

it and harmonize, as far as possible, with Federal laws and regulations on the subject of declaratory judgments. How far this latter injunction may be within the province of the legislature we need not consider at the present time, but we may remark it is difficult to see why, in matters of legal procedure, it is desirable for us to assimilate the practice in Pennsylvania to that of Kansas or Florida, however appropriate such uniformity may be with respect to negotiable instruments, warehouse receipts and the like. For some purposes it may be desirable to dress in ready-made uniforms, but it is better for most men to be measured for their clothing and have their coats cut to suit their individual requirements.

We deem it proper in this, the first case presented to us under this new statute, to consider its provisions somewhat at length. From our examination, we are of opinion, in the first place, that the act is clearly not intended to permit, much less require, the courts to answer abstract propositions of law or moot questions which are merely academic. This much appears to be conceded by every one. Nor do we think that it is intended to confer on the courts that jurisdiction to advise fiduciaries in the discharge of their duties, which, although it may obtain in some states, has never been allowed in Pennsylvania. A mere advisory opinion upon an abstract question is obviously not a judgment at all. The act contemplates the solution of a real controversy between adverse parties. In the third place, we are of opinion that the act, which is professedly remedial, should not be held to operate where the evil intended to be remedied does not exist. There are, indeed, certain cases where a declaration of rights may be advantageous, as, for instance, where the parties to a contract, before performance or breach by either of them, may have it construed by the court in order to have their rights determined *in futuro*, a case specially provided for in section 3. There and in other similar conditions the statute provides a remedy where none previously existed. Many procedural difficulties that confront fiduciaries in other jurisdictions as to the rights of creditors, legatees, next of kin, etc., and especially arise in the construction of wills, do not occur with us, for such questions can readily be solved under our own well established practice of having the fiduciary file an account, at the audit of which a speedy settlement may be had by an adjudication, as was pointed out in Morton's Estate, 201 Pa. 269; Jacoby's Estate, 201 Pa. 442, and other cases. This practice is far superior to the originating summons in England, as we may illustrate by a reference to such cases as Re Timson, 1916, 2 Ch. 362, which is frequently cited as an example. See article by Professor Borchard, 28 Yale Law Jour. 128. The question there simply concerned the scope of the word "issue" in a bequest, and would be disposed of by this court in the most expeditious manner by the adjudication of the trustee's account.

In the fourth place, and this particularly affects our decision of the present case, we are of opinion that the act was not intended to extend or in any wise affect the jurisdiction of this court so as to bring within it cases or a class of cases not previously cognizable here. In the very first line of its 1st section the act distinctly refers to the respective jurisdictions of the courts, and there is nothing whatever in any section of it to confer any jurisdiction on the Orphans' Court which previously belonged to the Common Pleas, and, indeed, if there were, this act would be unconstitutional, inasmuch as its title would be defective. We have above recited the questions which this petition for a declaratory judgment propounds to be answered by this court, and it is apparent that they all concern the title of Achille Olivieri to the real estate No. 129 North 15th Street under the lease made to him by Catharine Duff, Jr., the

validity of the lease and his right to the possession of the said premises thereunder. These matters are determinable in the Court of Common Pleas and not in this court. The mere fact that the validity of the lease may depend upon the construction of the wills of Catharine Duff, Sr., and Catharine Duff, Jr., or either of them, does not give this court jurisdiction. See Hazard's Estate, 253 Pa. 447; Todd's Estate, 253 Pa. 622; Ludwick's Estate, 255 Pa. 548, which cases, it seems to us, are conclusive, though, whether the appropriate remedy is by ejectment or in equity, we express no opinion.

Our conclusion is enforced by the further consideration that, even if we should assume jurisdiction to render a declaratory judgment upon the rights of the parties, we would not be able to enforce it, as this court lacks the appropriate machinery. True, the act refers to cases where no further or consequential relief is claimed, Ungaro's Will, 102 Atl. Repr. 244, and for application to the court having jurisdiction to grant the relief, but the power, if we have it, to pronounce a merely declaratory judgment without the power to grant consequential relief should be exercised with the greatest circumspection. It was indeed suggested that if, after we had entered a declaratory judgment against his alleged right, Olivieri should refuse to surrender possession (and we have no reason to assume that he would not so refuse), we might attach him for contempt, but we do not think we would have that right. And if our decree were used as the basis on which a Court of Common Pleas should be asked to issue a writ of *habere facias possessionem*, that court would be obliged, under section 8, first to determine that "the application is sufficient," and then, on "reasonable notice, to require any adverse party whose rights have been adjudicated by the declaratory judgment or decree to show cause why further relief should not be granted forthwith." We are not called upon to determine the precise effect of this section, but it would seem to us that this procedure would not befit the dignity of either the Court of Common Pleas or of this court, nor would it facilitate the orderly administration of justice. The only court which can enforce the right should be the one which declares it, and as, under section 6, the court may refuse to enter a declaratory judgment where such judgment, if entered, would not terminate the controversy, we are of opinion that, for this additional reason, we should not assume a jurisdiction that is not clearly vested in us.

The petition of the Integrity Trust Company, trustee under the will of Catharine A. Duff, is, therefore, dismissed without prejudice to the rights of the parties to proceed elsewhere.