## Hume's Estate

*James C. Furst*, for petitioners.

FLEMING, P. J., September 12, 1935.—The executors in this estate have presented their petition, which they aver to be in pursuance of the Declaratory Judgments Act of June 18, 1923, P. L. 840. We are asked to ascertain the various classes of legatees, to direct the executors to make distribution in accordance with a schedule to be set up in our decree, and to make a complete construction of the will.

No specific question or questions concerning the construction of the will or otherwise are stated in the petition, except that it is averred that a great uncertainty exists in the minds of the petitioners as to the order of distribution with respect to preference as to legacies which may have lapsed or which may not have lapsed. No specific reference is made to any particular legacy or legacies. In short, the petition asks the court to construe the will, which appears perfectly understandable so far as the language thereof is concerned and presents no ambiguity as written, and to advise the executors to whom and how much to pay. In other words, we are asked to assume the duties and responsibilities of the fiduciaries, investigate and find all the facts required, construe the law applicable to those facts, when found, and to place the fiduciaries in a position where their sole duty will be to pay or deliver in conformity with our decree, and to ask and obtain a final discharge. This is not what the Declaratory Judgments Act contemplated. If such were so we would be constituted ex officio an executor or administrator of every estate within this jurisdiction.

In Meyers' Estate, 10 D. & C. 291, Judge Gest, speaking of a similar petition, says:

"The present petition is merely prompted by the desire of the petitioners to take a short cut in order to realize their purpose; but the experience of this court shows that, in the great majority of cases, such irregular methods are productive of confusion and often of injury to the rights of the parties. . . . If this petition should be granted, the court would be overrun with many similar petitions for the construction of wills, and the determination of the rights of the parties thereunder."

It is well settled that the Declaratory Judgments Act was not intended for, and should not be invoked in cases where the judgment sought can be had as expeditiously in the ordinary course of legal procedure: List's Estate, 283 Pa. 255; Nesbitt v. Manufacturers' Casualty Ins. Co., 310 Pa. 374.

In Brumagin's Petition, 6 D. & C. 431, it was held that this act was not intended to permit, much less require, the courts to answer abstract propositions of law or meet questions which are merely academic. Neither is it intended to confer on the courts jurisdiction to advise fiduciaries in the discharge of their duties. The act contemplates the solution of a real controversy between adverse parties.

In Follweiler's Estate, 6 D. & C. 757, Judge Iobst says at pages 758-759:

"The safer and more judicious process would be to have the executors file their account and then ask for an audit to distribute the balance in their hands in accordance with the terms of the will of the testator. The matter will then be properly in court; the auditor can then legally distribute the fund, and the court, if exceptions are filed thereto, can render a final judgment that would be binding on all parties in interest. In Tyson's Estate, 191 Pa. 218, cited in Morton's Estate, 201 Pa. 269, it was said:

" 'It is quite true that the courts of Pennsylvania have no jurisdiction to declare the construction of a will and

rights under it by way of advice *in limine* and without adverse litigants actually before them. It is not desirable that they should have. Notwithstanding some convenience, as remarked by Sharswood, J., in Willard's Appeal, 65 Pa. 265, such practice would be contrary to the whole fundamental theory of our law under which courts do not advise but decide, and for decision there must be an actual contest. No man and no court can foresee the state of facts that may occur in the future and *ex facto oritur jus.* In no class of cases is this truer than in those arising under wills. It is the unexpected, the condition of facts unforeseen and, therefore, unprovided for, that gives rise to most of such litigation. And no judge can have failed to observe, not only in will cases, but in all others, how the knowledge and self-interest of parties actually contending for success conduces to precision and accuracy in the judicial result.' "

The Declaratory Judgments Act declares its purpose to be remedial, that is, it is to afford some remedy where none existed before that will avoid the law's delays by litigation and yet be safe and not costly to those who are seeking declaratory relief. But such remedy is not necessary here. The filing of an account, an audit to find facts and prepare a schedule of distribution, exceptions to the same if desired, and final action by the court upon the report of the audit will result in a judgment upon all parties in interest and will fully protect the fiduciaries.

This matter is parallel in no way to the decision recently rendered in Glintz's Estate. In that case there was an actual existing controversy as to the right of the executor to sell real estate. Such real estate had been sold and the question of title was adversely before us.

And now, September 12, 1935, the petition is dismissed at petitioners' cost.

And now, September 12, 1935, an exception is noted and bill sealed for the petitioners.

From Musser W. Gettig, Bellefonte.