## Lee's Estate

*William C. Ferguson, Jr.,* for petitioners.

STEARNE, J., January 10, 1941.—Guardians of the estate of a minor present a petition under section 49(e)2 of the Fiduciaries Act of June 7, 1917, P. L. 447, as amended by the Act of May 28, 1937, P. L. 1037, praying for authority to retain enumerated securities accepted by the guardian in kind upon distribution of a decedent's estate.

At the outset petitioners are confronted with a presumptive adverse decision of the Supreme Court in Rebmann's Estate, 338 Pa. 120, affirming this court in an opinion by Van Dusen, P. J., reported in 35 D. & C. 33.

The learned counsel for petitioners, in an excellent brief, vigorously maintains that the present situation is distinguishable from Rebmann's Estate, supra, and that petitioners "have brought themselves within the terms of the statute".

The basic legal principle of Rebmann's Estate is that the orphans' court possesses no jurisdiction to render a purely advisory opinion, and that the legislature has no constitutional authority "to turn the courts from tribunals organized to determine controversies judicially into those of giving legal advice."

The facts in the present case may be thus summarized: Petitioners, as guardians, upon the audit of the estate of the minor's grandmother, *requested* distribution in kind under section 49(e)1 of the Fiduciaries Act, supra. They were awarded on February 16, 1940, securities appraised at $71,773.58. Some of the securities are not legal investments. Petitioners submit a detailed list of securities of an inventoried value of $47,914.13, which the guardians desire to *retain.* The petition sets forth certain information pertaining to each investment. Petitioners request a decree authorizing retention of the specific securities.

Counsel suggests that the facts in the Rebmann case were different from those in the present case, because the securities in that case were not taken in kind upon a distribution of a decedent's estate under section 49(e)1 of the Fiduciaries Act, and hence section 49(e)2 of the Fiduciaries Act had no application. This, of course, is correct. However, the fundamental principles enunciated in the Rebmann case appear to be the same.

Section 49(e)2 of the Fiduciaries Act of 1917, as amended by section 4 of the Act of May 28, 1937, P. L. 1037, 20 PS §866, reads as follows:

"Where stocks, bonds, or other securities have been distributed in kind, as above provided, to any fiduciary, if such fiduciary be doubtful as to the propriety of retaining or making sale of such securities, he may apply to the orphans' court having jurisdiction of his accounts, by petition, for authority and direction to retain or sell the same; whereupon, after due notice to all parties interested, the said court shall make such order in the premises as to it may appear proper."

A literal reading of the words of the statute may appear to bring petitioners within its *letter*.

Mr. Justice Patterson said in the Rebmann case (p. 126):

"Whether or not it would be within the judicial power to entertain an application filed in the orphans' court under Section 49(e)2 for authority and direction to retain or sell specific securities, where the fiduciary entertained an honest doubt as to the propriety of their retention or sale and conversion arising out of factual considerations, is a question not involved in the determination of this case."

Our brother Van Dusen, P. J., wrote when the case was before us (35 D. & C. 33), at page 36:

"Section 49(e)2 was not intended to authorize general directions, but specific directions. To come within it, petitioners should deal with each security separately, and should explain the considerations pro and con which make

sale or retention desirable. Whether such a proceeding can be entertained can only be determined when it comes before us. In its present form the petition clearly seeks an advisory opinion; and it may be that a proceeding actually falling within section 49(e)2 would still be advisory—particularly if it sought a general negative decree for retention of a security."

But, as in the Rebmann case, the *purpose* is identical, namely, to secure the court's advice. On page 124 it is said:

"The manifest purpose of the petition was to obtain a judicial pronouncement of the Court's opinion purely by way of advice and assurance that the appellants would not be exceeding their authority in retaining the securities in question, and it is well settled that the giving of such advice is not within the judicial power of the orphans' court: *Tyson's Estate*, 191 Pa. 218; *Morton's Estate*, 201 Pa. 269; *Carwithen's Estate*, 327 Pa. 490."

The *spirit* of section 49(e)2 of the Fiduciaries Act of 1917, as amended, is akin to the Uniform Declaratory Judgments Act of June 18, 1923, P. L. 840, as amended by the Act of April 25, 1935, P. L. 72. Indeed, cases construing this act are freely cited by the Supreme Court in the Rebmann decision.

It clearly appears that the *purpose* of the legislature in the enactment of section 49(e)2 was *not* to secure the court's opinion simply by way of advice. That statute was clearly intended to enable the orphans' court, as in the case of a declaratory judgment, to decide a question when there exists an actual controversy between contending parties, or where antagonistic claims are present between the parties which indicate imminent and inevitable litigation. Should the statute, however, be construed as conferring purely advisory powers upon the court, such enactment would be clearly unconstitutional. As pointed out by Mr. Justice Patterson in the Rebmann case (p. 125):

". . . if this Section, properly construed, requires the taking of jurisdiction of a petition which, like the present

one, seeks a purely advisory opinion interpreting the law, then this Court would be obliged to hold it invalid as a legislative effort to turn the courts from tribunals organized to determine controversies judicially into those of giving legal advice, a function not contemplated by our organic law: *Reese v. Adamson*, [297 Pa. 13] at 17; *Pittsburgh's Consolidated Charter*, [297 Pa. 502] at 507; *Cryan's Estate*, 301 Pa. 386, 391."

In the present case there exists no controversy nor the ripening seeds of one. The guardians sought, and secured, distribution in kind. The petition is assented to, not only by the minor, who was over 19 years of age, but by her father, her mother, and her stepfather. Furthermore, the ex parte statements contained in the petition concerning the "pro and con" of the wisdom of selling or retaining the securities would not of themselves constitute sufficient data to enable the court to intelligently pass upon the application. Far more expert investigation and analysis would be required, and would possibly necessitate a reference to a special master. Obviously, the purpose of the petition is intended as an insurance or protection to the fiduciaries, so that when the minor becomes of age she may be foreclosed from seeking a surcharge against the fiduciaries in the event of a loss occasioned by such retention. Surely, under the facts of this case no situation presents itself of controverted or antagonistic claims, indicating imminent and inevitable litigation. It is apparent that this is an attempt to secure judicial legal advice which the court is without jurisdiction to supply.

Under different facts and circumstances it may well be that a controversial situation could arise whereby the orphans' court, under section 49(e)2 of the Fiduciaries Act, as amended, might be required to decide whether specific securities should be sold or retained. This situation, however, is not now before us, and we decline to pass upon it. The prayer of the petition is denied and the petition is dismissed.