## Kittredge Estate

612

Before Klein, P. J., Bolger, Lefever, Saylor and Shoyer, JJ.

*Fox, Rothschild, O'Brien & Frankel,* for petitioners.

KLEIN, P. J., April 22, 1960.—Daniel Wright Kittredge, testator, died January 21, 1957, leaving a will dated August 11, 1932, and two codicils, the later of which was dated May 6, 1948. Betty M. Kittredge, decedent's surviving widow, elected to take against the will. Girard Trust Corn Exchange Bank, executor and trustee under the will, filed its account, as executor, and the same was confirmed by adjudication of Shoyer, J., dated December 8, 1958.

Article fourth of the will provides as follows:

"I authorize and empower the executor of and/or trustee under this my Will and its successors to retain any and all investments that may come to it as part of my estate for so long a time as in its best judgment may seem advisable and for the best interests of my estate, . . . and at any time or times to sell, dispose of and make valid transfer of investments and reinvestments without application to any Court for an order to justify any retention or sale of investments and reinvestments and to invest the proceeds thereof from time to time in such stocks and securities as such executor and/or trustee may deem proper, either within or without the State of Pennsylvania, with due

regard for the safety of principal of my estate and a reasonable return of income therefrom, without confining such executor and/or. trustee to what are known as legal investments. . . ."

The second codicil modifies the foregoing article and recites:

"I, Daniel Wright Kittredge, do hereby alter and change the provisions under which the Girard Trust Company, as Trustee of my Estate, shall have the power to sell any, or all of my stocks to read any, or all of my stocks except all of my holdings in the common stocks of three corporations, to wit,

"1. Norfolk & Western Railway Co.,

"2 Bethlehem Steel Corporation,

"3. The Cincinnati, New Orleans & Texas Pacific Railway Co.

"That is to say, by this second Codicil, I enjoin said Trustee to hold and preserve my entire stock holdings in three companies named herein as a permanent. part of the corpus or principal of my Estate as Trustee."

As a result of the various distributions made in the course of its administration as executor, Girard now finds that approximately 90 percent of the trust portfolio is represented by the three issues of stock which it is proscribed from selling by virtue of the second codicil. In this situation, relying on the provisions of section 963 of the Fiduciaries Act of April 18, 1949, P. L. 512, 20 PS §320.963, Girard, as trustee, filed a petition on April 1, 1960, requesting the court to authorize it "to sell all or any part of the holdings of the trust" and for leave to "reinvest the proceeds thereof in accordance with" the provisions of article fourth of decedent's will "to the same extent as if the Second Codicil had not been executed."

In its petition the trustee stated, inter alia:

"8. Under the provisions of the said last Will and Testament of the decedent, the trust continues 'until

twenty-one years after the death of the survivor of my children and grandchildren living at the time of my death'. At the time of testator's death he left surviving him minor grandchildren and, therefore, in the normal course of events, this trust may well continue for seventy-five years.

"9. In the opinion of your Petitioner, it is unwise and imprudent that virtually the entire corpus of this trust should be invested without change for a period of seventy-five years, in but three securities, two of which are stocks of railroads. To do so would needlessly expose the corpus of the Trust to the risk of severe loss because of the concentration of investments in but two industries, both of a highly cyclical nature. Trustee submits that it is a cardinal rule of prudent investment to obtain proper diversification of investments.

"10. Your Petitioner believes that it is not for the best interests of the Trust for your Petitioner to be bound by the above quoted provision of the Second Codicil, and your Petitioner believes that your Petitioner should be able, in its discretion, from time to time, as it may see fit, to sell all or such part of the holdings of the Trust in the three securities specified in the said second Codicil and upon reinvesting the proceeds of such sale or sales to provide the protection of diversification consistent with the provision above quoted from Article FOURTH of the said last Will and Testament of the decedent.

"11. At the time of the filing of this Petition there has been no substantial adverse change in the market values of the said three securities. It is possible, however, that if action to obtain diversification is delayed until such time as an adverse change has occurred, in all likelihood it will then be too late properly to protect the best interests of the Trust."

Section 963 of the Fiduciaries Act of 1949, pursuant to which this petition was filed, provides:

"When the trustee is not authorized to do so by this act or is denied the power to do so by the trust instrument or when it is advisable that the sale have the effect of a judicial sale, he may sell, for any purpose of administration or distribution, any real or personal property of the trust, at public or private sale, or may pledge, mortgage, lease, or exchange any such property, or grant an option for the sale, lease, or exchange of any such property, under order of the court, upon such terms and upon such security and after such notice as the court shall direct, whenever the court shall find that such sale, pledge, mortgage, lease, exchange, or option is for the best interests of the trust."

In our opinion, we are without authority under the law to grant the relief which is being sought. What petitioner is seeking is, in reality, in the nature of a declaratory judgment or an advisory opinion.

Admittedly, the provisions of section 963 of the Fiduciaries Act of 1949, upon which petitioner relies, were intended to enable a trustee to obtain the imprimatur of the court when the trustee deems it wise or necessary to dispose of an item of real or personal property which it is forbidden to convey by reason of an interdiction in the instrument creating the trust. However, in situations such as that which now confronts the trustee, it must exercise its own independent judgment and actually sell some or all of the stocks it is holding, or present to the court for approval, a definite contract for the disposition of a specific number of shares to a named purchaser for a stated consideration.

In Carwithen's Estate, 327 Pa. 490 (1937), in which the trustees filed a petition for a judgment declaratory of their rights and powers under the investment provisions of the will, this court entered a declaratory

judgment holding that the petitioning trustees had the right to invest trust property in common and preferred stock of corporations. On appeal, the Supreme Court reversed, basing its decision on the absence of an actual controversy involving antagonistic claims indicating imminent and inevitable litigation and held that this court is not vested with jurisdiction merely to give advice. Justice Linn, speaking for a unanimous court, said, at pages 494-95:

". . . their averment . . . contains several contingencies, any one of which happening might reduce the decree, if granted, to mere advice; they may never find the shares of stock in which they would invest, or, if they find them, may not then have the funds available. Moreover, if the desired declaration were made and acted on and the investment were subsequently challenged for resulting loss, the trustees would still be required to justify the wisdom and propriety of their selection. Generally a cause of action may not be split into parts; until a trustee has acted, has exercised his powers by investing, the court has nothing from which to determine whether his act as a whole shall be confirmed or whether he must bear the loss; there must be a real controversy. Compare Straus's Estate, 307 Pa. 454, 457, 161 A. 547."

In Rebmann's Estate, 338 Pa. 120 (1940), the trustees sought a decree authorizing the retention of nonlegal trust investments. The Supreme Court affirmed our ruling refusing to render an advisory opinion and said, at page 124:

". . . The manifest purpose of the petition was to obtain a judicial pronouncement of the Court's opinion purely by way of advice and assurance that the appellants would not be exceeding their authority in retaining the securities in question, and it is well settled that the giving of such advice is not within the judicial power of the orphans' court; Tyson's Estate, 191 Pa.

218; Morton's Estate, 201 Pa. 269; Carwithen's Estate, 327 Pa. 490."

Petitioner concedes in its petition that there had been no substantial adverse change in the market value of the three securities in question when the petition was filed, although it suggests that it is possible that such adverse change may occur in the future. Furthermore, petitioner does not aver that it proposes to sell these shares now or at any specified time in the future. It is possible that it will, in its discretion, decide that it is inadvisable to endeavor to sell any of these shares during the pendency of the trust, or, if it does attempt to sell, that it will not be able to find a purchaser who will pay a price which it regards as adequate. The contingent character of the circumstances presented by the petition makes the entire situation so speculative and uncertain that any opinion we might render at this time with respect to the sale of the stocks in question would be purely advisory in nature.

The dilemma in which the trustee now finds itself is largely of its own making. The inventory filed by its discloses that decedent's estate had a value of $2,178,726.79, composed of $1,208,862.25 in the three issues of stock which testator directed trustee to retain and $969,864.54 in cash, bonds and stocks of other companies and minor miscellaneous assets. The accountant thus had, at the inception of its administration as executor, almost a million dollars in unrestricted assets nearly all of which it used to pay taxes, administration expenses and the share of the widow who had elected to take against the will. It is regrettable that petitioner did not find some way to present its problem to the court prior to, or at the audit before Judge Shoyer, and before it divested itself of these assets. If it had taken this precaution it might have obviated its present dilemma.

We, accordingly, enter the following

*Decree*

And now, April 22, 1960, the prayer of the within petition is denied.