# Meurer *v.* Stokes, Appellant.

*Equity—Equity pleading—Cross-bill—Answer—Demurrer to cross-bill—Jurisdiction, C. P.—Testamentary trustees—Misconduct—Control—Jurisdiction, O. C.*

1. A cross-bill in equity which does not pray for discovery and which sets up matters in defense which are equally available by answer, or which are not germane to the matters involved in the original bill, is demurrable.

2. The Orphans' Court has exclusive jurisdiction to require a testamentary trustee to file an account of his management of the estate of his testator, to make good losses resulting from his breach of trust, and to give security for proper management of the estate in the future; and such relief when prayed for by bill in equity filed in the Common Pleas Court, will be denied.

3. The delinquencies of a trustee do not deprive his wife of any right that she may otherwise have to insist on the partition of the land of which her husband is trustee for herself and other parties, and a bill in equity for the partition of such land, brought by such trustee and his wife will not be dismissed although it appear that such trustee is insolvent and has been guilty of breaches of trust.

4. A bill in equity for partition was filed by a married woman and joined in by her husband, who was testamentary trustee of the land sought to be divided. It appeared that testator had bequeathed his estate, of which the land in suit was a part, for the benefit of his four daughters, with powers of appointment by will and contingent remainders over in case the powers should not be exercised. Testator further provided that the share of one of the daughters should be charged with the costs and expenses resulting to the estate from certain litigation which she and her husband were pressing against testator. Certain contingent remaindermen in that share of the estate of which the income was derived by such daughter, filed a cross-bill wherein they alleged that the other daughters had received larger shares of the estate than was their due, that by reason of certain improper payments to such daughters, the share in which plaintiffs were interested, was diminished, and prayed that out of the proceeds to be realized in the partition proceedings, the estate should be reimbursed to the extent of the alleged improper payments, and further averred that the plaintiff trustee was insolvent and had been guilty of several breaches of trust and prayed that he be required to file an account, and to

make good losses caused by his mismanagement, and to give securi-
ty.   The lower court sustained a demurrer to the cross-bill.   *Held,*
no error.

Argued May 12, 1914.   Appeal, No. 219, Jan. T., 1913,
by Percy Stokes, from decree of C. P. No. 4, Philadelphia
Co., Dec. T., 1911, No. 5988, in Equity, sustaining de-
murrer and dismissing cross-bill in case of Charles A.
Meurer and Ella E. Meurer, his wife, in right of said
Ella E. Meurer v. Ellis Stokes and Rebecca B. Stokes,
his wife, in right of the said Rebecca B. Stokes, Charles
S. Davis, Jr., A. Elton Davis, Chas. A. Meurer, Trustee
for Rebecca B. Stokes and Ella E. Meurer under the
will of Anthony Elton, deceased, Percy Stokes, Ellis
Stokes, Jr., Harry Beck and Bessie S. Beck, his wife, in
right of the said Bessie S. Beck, Manuel Gonzales and
Annie S. Gonzales, his wife, in right of the said Annie
S. Gonzales, Frank A. Harrigan and Ella E. Harrigan,
his wife, in right of the said Ella E. Harrigan and
Robert J. Savidge and Mary M. Savidge, his wife, in
right of Mary M. Savidge.   Before FELL, C. J., BROWN,
MESTREZAT, ELKIN and MOSCHZISKER, JJ.   Affirmed.

Bill in equity for partition.

On demurrer to a cross-bill filed by certain defend-
ants, AUDENRIED, J., filed the following opinion:

Anthony Elton died December 29, 1884.   By his will
he left his whole estate to his son-in-law, Charles A.
Meurer, as trustee, directing that upon the termination
of certain litigation in which he was involved with
another son-in-law, Ellis Stokes, and the latter's wife,
his property should be divided into four equal parts, and
that each of his four daughters should enjoy during her
life the income from one of these shares, which at her
death should be transferred to her appointee, or in de-
fault of appointment to her children or their issue, or
for want of such appointment or children, to the right
heirs of the testator.

The will provided that the costs and expenses of the litigation above mentioned should be charged against the share to be assigned to the testator's daughter, Mrs. Stokes.

Mrs. Davis, one of the testator's daughters, is dead, and her interest is now vested in her children.

Mrs. Wiliams, another daughter of the testator, is also dead, and her share in his estate, by virtue of her will and a deed from her appointee therein, is now vested in her two surviving sisters, Mrs. Meurer and Mrs. Stokes, each having acquired a third part thereof, and in her nephews, A. Elton Davis and Charles S. Davis, each of whom acquired a sixth part thereof.

On February 28, 1912, Mrs. Meurer (her husband, Charles A. Meurer, joining with her) filed a bill praying for the partition of three pieces of land which were included in her father's estate. She avers that the several parties interested therein as tenants in common with her, and the respective shares of those parties are as follows:

| | |
|---|---|
| Charles A. Meurer, trustee for Rebecca B. Stokes | 15-48 |
| Charles A. Meurer, trustee for Ella E. Meurer .. | 15-48 |
| Rebecca B. Stokes........................... | 1-48 |
| Ella E. Meurer.............................. | 1-48 |
| Charles S. Davis, Jr......................... | 8-48 |
| A. Elton Davis.............................. | 8-48 |

Ellis Stokes, Jr.
Percy Stokes
Bessie S. Beck
Annie S. Gonzales
} Remainder in 15-48, subject to life estate of Rebecca B. Stokes.

Ella E. Harrigan
Mary M. Savidge
} Remainder in 15-48, subject to life interest of Ella E. Meurer.

All of these parties have been joined as defendants in the bill, and all against whom a decree pro confesso for

want of an appearance or answer has not been entered, have filed answers thereto.

It may be noted in passing that upon the averments of the bill there seems to have been an error made in the calculation of the shares of the several parties above mentioned. With this, however, we are not concerned at present. Nor have we now before us for consideration the question whether Mrs. Meurer is entitled to the partition of that portion of her father's estate which happens to consist of realty.

Percy Stokes and Bessie S. Beck (her husband, Harry Beck, joining with her), all of whom are named as defendants in the bill, have united in filing a cross-bill against Mrs. Meurer and her husband, the plaintiffs therein, and against the other parties named therein as defendants. To this cross-bill demurrers have been filed on behalf of Mrs. Meurer and A. Elton Davis, and the case came before the court and was argued on these demurrers. All that we are now called on to decide is whether or not the cross-bill can be sustained.

The prayers of the cross-bill are as follows:

1. That those of the defendants who are parties to a certain agreement with Ellis Stokes and his wife be required to perform their part under the same specifically.

2. That out of the proceeds of the sale in the partition proposed there shall be repaid to the estate of Anthony Elton such moneys as, in view of the agreement above referred to, should not have been paid to Mrs. Meurer, Mrs. Davis and Mrs. Williams, from the corpus of the estate, each of their respective shares in the proceeds of the partition sale to be charged with the amount which its owner or her successors may thus have received in violation of said agreement.

3. That the estate of Anthony Elton shall be reimbursed by the sisters of Mrs. Stokes, or their successors, or out of their shares in the proceeds of the sale of the property sought to be divided, certain moneys paid by

the trustee under Mr. Elton's will in order to satisfy a judgment which under the agreement above mentioned should have been paid by Mrs. Williams, Mrs. Davis and Mrs. Meurer.

4. That Charles A. Meurer, as trustee under Mr. Elton's will, be required to account for the effects of the estate; and that no partition be made of the properties mentioned in the bill until Mr. Meurer has made good in full the share of Rebecca B. Stokes under the will, and until her share in the personal estate included in the trust shall be transferred for her protection to the hands of a separate trustee.

5. That Charles A. Meurer be required to make good to the share of Rebecca B. Stokes in the trust under her father's will, all losses which have been incurred by him with respect to that share through the commission of certain breaches of trust.

6. That Charles A. Meurer be required to enter security as trustee.

The facts set forth as the basis of the first, second and third prayers of the cross-bill are briefly as follows:

When Anthony Elton died his daughter, Rebecca B. Stokes, and her husband Ellis Stokes, were pressing certain claims against him in the courts. In one proceeding they demanded payment of sums aggregating $76,-799.73. In another they advanced the claim that he held title to property No. 906 North Broad street in trust for them. It was to these proceedings that Elton referred in his will when he directed that the costs, expenses and payments which should have been incurred or paid by him, or his executors, on account of the suits in which he or his estate had been or might become involved on account of Ellis Stokes, should be deducted from the share in his estate which was to be allotted to Mrs. Stokes.

On May 12, 1886, "In settlement of controversies," it was agreed between the four daughters of Mr. Elton and the husbands of three of them (Mary Elton being at that time unmarried), that Mr. and Mrs. Stokes thereby

released all suits, claims and demands whatever against the Elton estate, and that property No. 906 North Broad street (which is not one of the pieces of real estate the partition of which is asked for by the bill), should be conveyed to Mrs. Stokes clear of all encumbrances except a mortgage debt of $20,000, held by the estate, the time for the payment of which was to be extended for two years, provided that interest at the reduced rate of five per cent. per annum should be paid thereon without default. It was stipulated that "the share of the estate of Anthony Elton, deceased, devised to Rebecca B. Stokes by the will of Anthony Elton is not to be made liable to any deduction by reason of this agreement."

It is averred that the property, No. 906 North Broad street, was at that time subject to the lien of a certain judgment, and that this was paid with the money of the Elton Estate, whereby in spite of the last clause quoted from the agreement above mentioned, the share of Rebecca B. Stokes in that estate was diminished. It is also averred that there was delay in the making of the conveyance of No. 906 North Broad street to Mrs. Stokes, and that during the four years and nine months that elapsed before she succeeded in obtaining title to that property she was charged with interest amounting to $6,865.95 on the mortgage to which it was subjected, this charge being made against her income account, in spite of the terms of said agreement. It is not alleged, however, that Mrs. Stokes was deprived of the possession of the property during the time mentioned. The complaint is that she was unable to sell or mortgage it during that period.

The plaintiffs in the cross-bill claim that since they are remaindermen in that share of the Elton Estate the income of which is to be enjoyed by Mrs. Stokes during her life, they are adversely affected by reason of the diminution of her interest in the estate in the manner above described.

Even though it be assumed for the purpose of this

discussion that the plaintiffs in the cross-bill, although not parties thereto, are, upon the theory that in executing the agreement with the other devisees of Anthony Elton their parents were acting with the power and intention to represent them as well as themselves, entitled to the benefit thereof, this portion of the cross-bill seems to be open to serious objection.

1. The interest on the $20,000 mortgage on No. 906 North Broad street was not charged by the trustee under Mr. Elton's will against the principal of Mrs. Stokes' share in the estate, but against her income account. In this the plaintiffs in the cross-bill had no concern. They are merely remaindermen.

2. The agreement of May 12, 1886, above referred to did not provide that the title to No. 906 North Broad street should be cleared of encumbrances at the expense of Mary Elton, Mrs. Meurer and Mrs. Davis. That is, however, what is contended for by the plaintiffs in the cross-bill. Mrs. Meurer and Mrs. Davis, with their husbands and their unmarried sister, it is true, agreed that this property should be conveyed to Mrs. Stokes. But they did not hold the title. This was vested in the trustee under their father's will. They had no more power to control its transfer, or the encumbrances upon it, than had Mrs. Stokes and her husband. The undertaking that the trustee should clear up the encumbrances and then convey it was no more binding on them than it was on her. Mrs. Stokes as well as her sisters covenanted that this property should be conveyed clear of encumbrance. Who could convey it? Nobody but the trustee. Who, therefore, was to pay off the encumbrance upon it? Manifestly the same person, the trustee under Anthony Elton's will. The expenditure for this purpose was to be made primarily by the estate. While it was expressly stipulated that Mrs. Stokes should not be charged with any deduction from her share in her father's estate "by reason of this agreement," it is not claimed that it was intended that her sisters should be

charged with the value of the Broad street property. If they ought not to be charged with that, it cannot consistently be held that they should bear the expense involved in clearing its title of liens. Naturally, therefore, the cost of doing so would ultimately fall on the four shares in the estate in equal proportions, unless it resulted from a suit in which the estate had been involved on account of Ellis Stokes. How much of this expenditure was charged against Mrs. Stokes is not clearly averred, and it is impossible from the meagre reference made by the cross-bill to the judgment or decree in the United States Court for the Eastern District of Pennsylvania to say whether or not it was connected with the litigation in which Mr. Elton was involved on account of Ellis Stokes. Merely to say that it was unjust and illegal to charge the amount paid out in this way against the principal of the share in which the plaintiffs in the cross-bill are interested as remaindermen, is not enough. The illegality and injustice of the charge must be shown by sufficient explanatory averments, and these are wanting.

3. The facts above referred to, if they had the importance attached to them by the cross-bill, would be relevant only as bearing on the question of the relative proportion of the share that each of the parties in the case owns in the estate of Anthony Elton. That such is the view of the plaintiffs in the cross-bill appears by their first three prayers. Matters of that kind, however, may and should be set up by way of answer, and they have thus in fact been brought before the court in these very proceedings. A cross-bill should not be filed where no discovery is sought, and where the matters in defense thereby set up are equally available by answer, since in such a case it would not only be unnecessary but useless. Such a cross-bill may be dismissed on demurrer: Beck v. Beck, 43 N. J. Eq. 39; Newberry v. Blatchford, 106 Ill. 584; 5 Encyclopedia Pleading and Practice, 639.

The fourth, fifth and sixth prayers of the cross-bill

are based upon the averments that Charles A. Meurer, who joins his wife in the original bill in praying for the partition of the real estate mentioned therein, but who, outside of the fact that he is trustee under Anthony Elton's will has no beneficial interest in that real estate except as the husband of Ella E. Meurer, is insolvent and has been guilty of several breaches of trust. We are asked to require him to give security as trustee of the Elton estate, to file an account of his management thereof, and make good certain losses alleged to have resulted to the interest of Rebecca B. Stokes through sundry breaches of trust on his part.

We are of the opinion, however, that the delinquencies of Mr. Meurer do not deprive his wife of any right that she may otherwise have to insist on the partition of the land in which she has an interest in common with the other parties to her bill. Moreover, it is clear that we have no power to deal with Charles A. Meurer as suggested by the plaintiffs in the cross-bill. He is a testamentary trustee, and as such is not subject to the jurisdiction of the Court of Common Pleas. Only the Orphans' Court can exact an account from him, surcharge him, remove him from his position, or require him to give security for the performance of his duties.

If a defendant relies on the equities of his case for anything beyond a defense, and seeks affirmative relief, he must, it is true, file a cross-bill. An answer will not be sufficient. The matters set up, however, in a cross-bill, must be germane to the matters involved in the original bill.

We are of the opinion that the fourth, fifth and sixth prayers of the plaintiff's bill, and the facts alleged in support of them, are without relevancy to the question of the right of the plaintiffs in the original bill to the relief for which they pray.

Inasmuch, therefore, as the matters set forth in the cross-bill that are germane to the subject-matter of the original bill are such as are available by way of answer

thereto, and all matters contained in the cross-bill that could not be set up by answer are without relevancy or bearing on the subject-matter of the original bill, the first objection suggested by the demurrer seems to us to be sound.

It follows, therefore, that the demurrer to the cross-bill must be sustained, and that the cross-bill must be dismissed at the cost of the plaintiffs therein.

The court sustained the demurrer and dismissed the cross-bill. Percy Stokes appealed.

*Error assigned* was the decree of the court.

*Owen B. Jenkins,* with him *John B. Rutherford,* for appellant.

*Joseph Savidge,* with him *Frederick J. Geiger* and *William Gorman,* for appellee.

PER CURIAM, July 1, 1914:

The decree appealed from is affirmed on the opinion of Judge AUDENRIED.

---

# Harner v. F. H. White Company, Appellant.

*Negligence—Master and servant—Unguarded machinery—Act of May 2, 1905, P. L. 352, Section 11—Contributory negligence—Case for jury.*

In an action against a manufacturing company to recover damages for personal injuries sustained by the plaintiff, due to the alleged negligence of the defendant in failing to properly guard its machinery as required by the Act of May 2, 1905, P. L. 352, Section 11, the case is for the jury and a verdict for the plaintiff will be sustained where it appears that at the time of the accident plaintiff was employed by the defendant and was engaged in working at a sewing machine, which was placed upon a table and