Wilson, Mayor, *v.* Board of Directors of
City Trusts et al., Appellants.

546

Argued December 2, 1936.   Before Kephart, C. J., Schaffer, Maxey, Drew, Linn, Stern and Barnes, JJ.

*Joseph P. Gaffney,* for appellants.

*Joseph Sharfsin,* City Solicitor, with him *Abraham Wernick* and *Ernest Lowengrund,* Assistant City Solicitors, for appellee.

OPINION BY MR. CHIEF JUSTICE KEPHART, December 8, 1936:

S. Davis Wilson, as Mayor of the City of Philadelphia, and as a member of the Board of City Trusts, petitioned the Court of Common Pleas of Philadelphia County for an alternative writ of mandamus to compel the remaining Directors of the Board of City Trusts to submit their books, records, accounts and documents relating to the management and administration of the moneys and properties in their control to three experts to be appointed by him, for the purpose of an inspection, examination and audit so that he might be enabled to properly perform his duties and functions as a trustee and properly protect and safeguard public interests and moneys. It was averred in the petition that the other members of the Board had refused this request. After the alternative writ issued, a rule to dismiss the action under the Act of March 5, 1925, P. L. 23, for want of jurisdiction was discharged.

This appeal challenges the jurisdiction of the court below over the respondents and the cause of action. It also comprehends the question whether any court can grant the prayer for relief on the facts averred.

Our first consideration must be addressed to the power of the court of common pleas to order the writ to issue. It is contended by appellants that the orphans' court has jurisdiction over all of the activities of respondents as they control trusts both testamentary and inter vivos.

From earliest times the orphans' court has had jurisdiction reposed in it over testamentary trustees whether named in the will or serving by virtue of their office as executors or administrators. Whatever may have been the uncertainty as to the jurisdiction of the orphans' court prior to 1832, the Act of March 29, 1832, P. L. 190, Section 4, and the decisions which followed it, cleared away. It provided that the jurisdiction of the several orphans' courts shall extend to and embrace trustees who are accountable in any way for the property of a decedent. The Act of June 14, 1836, P. L. 630, awarding to the courts of common pleas jurisdiction over assignments by deed, will or otherwise, excepted from its provisions "trusts created by will, and vested in executors and administrators, either by the words of the will, or by the provisions or operations of law. . . ." By the Act of June 16, 1836, P. L. 784, Section 19, the legislature reaffirmed the jurisdiction of the orphans' court over all cases within their respective counties wherein trustees might be possessed or in any way accountable for real or personal property under a will.

In *Lewis v. Lewis,* 13 Pa. 79, 82, Chief Justice GIBSON stated: "By the 4th section of the Act of the 29th of March, 1832, its [the Orphans' Court] jurisdiction is extended to all cases in which '. . . trustees are possessed of, or undertake the care and management of, or in any way accountable for the real or personal estate of a decedent'; and the provision is repeated, word for word, in the 19th section of the Act of 1836."

As Judge PENROSE said, in *Horowitz's Estate,* 20 C. C. 616: "The Act of June 16, 1836, declares that the jurisdiction of the orphans' court shall extend to 'all cases . . . wherein executors, administrators, guardians or

trustees may be possessed of, or are in any way account-able for any real or personal estate of a decedent.' Language could not be broader." See also the opinion of Judge PENROSE in *Leaming's Estate*, 25 C. C. 438; and see *Williams's Estate*, 236 Pa. 259; *Meurer v. Stokes*, 246 Pa. 393; *Kimberly's Estate, (No. 2)*, 249 Pa. 475, 480.

Though this jurisdiction was broad, it was not altogether exclusive. In *Brown's Appeal*, 12 Pa. 333, the court ruled that the orphans' courts under these statutes had exclusive jurisdiction with respect to testamentary trustees by virtue of office as executors and administrators and that they had concurrent jurisdiction with the common pleas courts over testamentary trustees so named in the will. The court there stated, p. 336: "The object of the Act was to give power to the common pleas and not to take it from the orphans' courts." It expressly overruled *Wheatley v. Badger*, 7 Pa. 459, wherein it had been ruled to the contrary. The distinction thus laid down was preserved in many cases. See *Seibert's Appeal*, 19 Pa. 49; *Dundas's Appeal*, 64 Pa. 325; *Wapples's Estate*, 74 Pa. 100; *Woddrop v. Weed*, 154 Pa. 307; *Hospital v. Penna. Co., etc.*, 158 Pa. 441; *Sager v. Meade*, 171 Pa. 349.

However, even as early as *Brown's Appeal*, supra, this Court felt the necessity of a single court to administer all problems arising in cases of testamentary trusts. Justice COULTER there stated: "It is for the interest of society that there should be one tribunal to which parties can resort without being perplexed by such abstruse distinctions." See also *Seibert's Appeal*, supra. Because of the fact that the question as to whether or not the trustees were such nominatim or virtute officii depended often upon the construction of the will, it was said in *Anderson v. Henzey*, 7 W. N. C. 39, that "It is the safest course in all cases of testamentary trusts to invoke the aid of the orphans' court." And there is an indication in *Meurer v. Stokes*, supra, decided in 1914, that the

powers of the orphans' court in this regard were so far in the ascendency over those of the common pleas that the jurisdiction of the former had become virtually exclusive over all classes of testamentary trusts.

In the Report of the Commission to Codify and Revise the Law of Decedents' Estates, at p. 215, it was said: "The jurisdiction of the common pleas has been rarely exercised in recent years and the late decision of the Supreme Court in *Simpson's Estate* . . . brought the matter to the attention of the commissioners who are of opinion that there is now no good reason why the jurisdiction of the orphans' court should not be made exclusive as to both classes of testamentary trusts." Upon the recommendation of the Commissioners it was then provided in the Fiduciaries Act of June 7, 1917, P. L. 447, Section 46(b)(g) for ". . . *exclusive* jurisdiction . . . *of all testamentary trustees,* . . ." See also the Orphans' Court Act of June 7, 1917, P. L. 363, Section 9. It was thus intended to abolish the jurisdiction formerly exercised concurrently by the common pleas with the orphans' courts over testamentary trustees nominatim and vest exclusive jurisdiction of all such trusts in the orphans' court of the county where the will is probated. Judge GEST so held in *Girard's Est.,* 29 Dist. 62, in ruling that the orphans' court had jurisdiction to modify leases made by the Board of City Trusts with the consent of the court of common pleas.

It is clear therefore that the orphans' courts of Pennsylvania have exclusive jurisdiction over the control, administration and management of all trust estates created by will and are responsible for the proper management, administration and preservation by the trustees of the trust res.

The scope of the powers that may be exercised by that court in relation to the administration, management and control of the trust property is ample for all purposes. It has been held that testamentary trustees are officers of the court *(Laverelle's Estate,* 101 Pa. Supe-

rior Ct. 448) and it is only right and proper that they should be subject to the control of the court to which they must account, which may surcharge them for dereliction in office and determine whether such dereliction has taken place. In the exercise of this power particularly where "charitable uses or bequests are involved, it [the orphans' court] has [the] broad visitorial and supervisory powers of the Commonwealth": *Toner's Estate*, 260 Pa. 49. The Act of June 7, 1917, P. L. 363, Sec. 9(b), which provides that the orphans' court shall have jurisdiction over the "control, removal, discharge and settlement of accounts of . . . testamentary trustees" confers extensive powers. In *Laverelle's Estate*, supra, the court said, "The power to 'control' has a comprehensive significance, including the right to direct, remand, dominate," and at p. 451: "There can be no question that the Orphans' Court possesses plenary powers within its sphere." In *Lafferty v. Corcoran*, 180 Pa. 309, this court said, with reference to the power of the orphans' court to compel an accounting by a trustee, "The orphans' court has ample power to afford all needed relief in the premises. Its authority is plenary, embracing as it does all the powers of a court of chancery." And, in *Shollenberger's Appeal*, 21 Pa. 337, the court said: ". . . within its appointed orbit its jurisdiction is exclusive, and therefore necessarily as extensive as the demands of justice."

The scope of supervisory control of necessity includes any matter which concerns the integrity of the trust res —its administration, its preservation and its disposition and any other matter wherein its officers [trustees] are affected in the discharge of their duties. To the orphans' court is confided by the Fiduciaries Act of June 7, 1917, P. L. 447, section 47(b): "The . . . power . . . to appoint one or more examiners to make periodical or special examinations of the assets of estates in the hands of . . . trustees . . . and power to require all per-

sons in whose custody or control such assets may be held, to present them for such examination."

Thus, there is express statutory authority in them for the exercise of the power upon which the relief here sought is predicated. By common law, statutes and, to a certain extent, the Constitution, the field of jurisdiction has been built within the orphans' court over trust estates created by will. There should be no divided authority or power, as it weakens the ultimate object to be attained and one court alone should be responsible. See *Seibert's Appeal*, supra; *Brown's Appeal*, supra. No other court or body should be permitted to intermeddle with their control unless it be by express, definite and positive enactment by the legislature. As has been stated, the power of the orphans' court has grown extensively, modelled after a court of chancery with similar means to regulate and enforce its decrees and orders: *Shollenberger's Appeal*, supra; *Wilson Black's Executor v. Marcus Black's Executors*, 34 Pa. 354. Within its appointed sphere the jurisdiction of the orphans' court is complete and exclusive. It continues as long as the trust res is administered by the trustee, and ends when that res is delivered to the beneficiary or the ones entitled thereto by will: see *Watson's Estate*, 314 Pa. 179.

Having settled the problem as to what court has control as to all trusts created by will, we next consider trusts inter vivos. Such trusts were within the exclusive control of the court of common pleas until the Act of June 26, 1931, P. L. 1384, amending Section 9 of the Act of 1917, P. L. 363. Two paragraphs were added to Section 9, increasing the jurisdiction of the orphans' court: (n), which gave control over the accounts of trusts inter vivos; (o), the control of life insurance trusts. We held that the purpose of these sections was to create concurrent jurisdiction in the orphans' court and common pleas over trusts inter vivos: *Schwartz v. Schwartz*, 316 Pa. 318; *Roseberry's Estate*, 317 Pa. 45. As to these trusts the court assuming jurisdiction has

control and jurisdiction may be lodged in either court. *All trusts created by wills are within the exclusive jurisdiction of the orphans' court and trusts inter vivos may fall within the jurisdiction of the two courts.*

To whom then is the Board of City Trusts accountable? The Act of June 30, 1869, P. L. 1276, provided that "the duties, rights and powers of the City of Philadelphia, concerning all property . . . dedicated to charitable uses or trusts, the charge or administration of which are now or shall hereafter become vested in . . . the city . . . shall be discharged by the said city through . . . a board composed of fifteen persons, including the mayor of said city, . . . to be called directors of city trusts, who shall exercise and discharge all the duties and powers of said city, . . . concerning any such property appropriated to charitable uses . . . to the extent that the same have been or may hereafter be, by statute law or otherwise, vested in and delegated to the said city. . . ." The majority of the trusts whose administration devolved upon the Board were subject to the control of the Orphans' Court of Philadelphia County prior to the passage of this Act. The Act in no way ousted that jurisdictional control, and the fact that it required reports to be made to the City Council and others did not divest the orphans' court of the normal control that it had hitherto exercised over all trust estates created by will. Its power has been recognized consistently since the passage of that Act.*

The common pleas judges, acting as a board of appointment, designate the members of the Board and may

---

* In *Brown v. Brancato*, 321 Pa. 54, 62, wherein the jurisdiction of the orphans' court was raised but not decided, it was stated: "On this subject reference may be made to *Franklin's Est.*, 150 Pa. 437, 24 A. 626, and to numerous decrees made by the Orphans' Court on petitions by the City of Philadelphia acting by the Directors of the Board of City Trusts. Many of these proceedings are docketed to Number 10, July Term, 1885, though others will be found by reference to the docket indexes in the office of the Clerk of the Orphans' Court."

remove them (Act of June 30, 1869, P. L. 1276, Sec. 2, and Act of May 25, 1874, P. L. 228). *This power they have, however, not in the capacity of a court, but as a board of appointment.* The persons named under the Act of 1869 are the representatives or agents of the City of Philadelphia as trustee. While the board of judges of the common pleas court appoints the trustees, the orphans' court possesses exclusive control over them in the conduct of testamentary trusts. They are, as to the orphans' court, in the same situation as other trustees amenable to them.

What is the relation of this Board to the government of the municipality under the Act? As stated by Judge SHARSWOOD, in *Philadelphia v. Fox*, 64 Pa. 169, where the Act of 1869 first came up for consideration, it merely provided that one function of municipal government that had theretofore been exercised by the City generally, was removed and placed in a body of fifteen men, while the Mayor, Council and other officers continued to exercise all other governmental functions. Both groups are constituents of City government but they are independent of each other. Judge SHARSWOOD there said, the directors are "a board dissociated from the general government of the city." It performs a part of the city's duties and as such, could be considered a part of the City government, but its functions are apart from the general governmental powers exercised by the City itself.

Article II, Section 6 of the Charter Act of June 25, 1919, P. L. 581, does not authorize the Mayor, as Mayor, to assert the power here requested. The Act provides that the Mayor may "appoint three competent persons to examine, without notice, the accounts of any city department, trust, officer or employee. . . ." Though the Board of City Trusts is nominated in the Act of 1869 as the agent of the City for the purpose of executing the trusts, the Act of 1919 in Article III, Sec. 1, as amended, provides explicitly what shall be considered the departments of the City. Judge SHARSWOOD's opinion so ably

demonstrates the complete severance of the Board of City Trusts as an administrative agency from the other agencies of City government that we need not dwell on this point at length. To contend that the Act of 1919 intended to invade the heretofore exclusive jurisdiction of the orphans' court and subject the Board of City Trusts to a new supervision by reason of a statute which vested special powers in one of its members because of an official capacity he holds in another respect, would be to interpret that statute as amending the Act of 1869 as well as the Acts relating to the jurisdiction of the orphans' court. The legislature itself indicated no intent to "amend, extend" or add to the earlier statutes as the Act of 1919 omits reference to the Act of 1869, to say nothing of the failure of compliance with constitutional methods of amendment. The city charter does not support any such conclusion; on the contrary, without elaborating in unnecessary detail, the opposite result clearly appears.

While we recognize that the Act of 1919 does not place any concurrent power over testamentary trusts in the Mayor, which would interfere with the jurisdiction exclusively vested in the orphans' court, nevertheless some effect must be given to the city's right under that Act to inspect the books, papers and documents as prayed for in this petition. That right on the part of the city, through the Mayor, should be exercised through an application to the orphans' court. We thus sustain the jurisdiction heretofore confided exclusively to the orphans' court and make the Act of 1919, through the word "trusts," a workable Act.

There is a ground upon which the Mayor's right of inspection is absolutely beyond dispute. We now consider how far the Mayor in his capacity as a member of the Board may force his fellow members to submit the trust records and documents to his examination, inspection and audit. In approaching this question we cannot disregard the fact that the Mayor is the duly elected execu-

tive of one of the beneficiaries, the City, and that he represents not only himself as an individual but to a certain extent the citizens of Philadelphia who constitute the beneficiaries of all the trusts. When elected to office he automatically assumes his position in the Board of City Trusts and it is his right and duty to have laid before him all the evidence necessary to successfully guide him as a member. By reason of his representative capacity, the request from such a person has an added force. In *Brown v. Brancato*, 321 Pa. 54, we stated, "They [the Directors] possess both an individual and a common official interest in the preservation of the trust property." To withhold the means of knowledge concerning that property is to withhold the power to exercise the duty of preservation.

The law is clear that a trustee may compel his co-trustee to permit an examination, inspection and audit of the records of the trust estate and all matters in connection therewith that he may perform the duties with which he is intrusted and for whose exercise he is responsible. See *Adams's Estate*, 221 Pa. 77; *Somers v. Hanson*, 5 Phila. 87; *Syfert's Estate*, 9 Phila. 320; Bogert, Trusts & Trustees, Section 961; *Sloo v. Law*, 3 Blatchf. 459, Fed. Case No. 12,957. In Bogert, op. cit., supra, it is stated: "If one trustee excludes the others from access to the books of the trust, they may obtain relief."

It is scarcely necessary to add that a co-trustee, engaged, as is the Mayor, with a multitude of other important official duties, may appoint disinterested experts to make the audit and examination in his behalf. His right in this respect is identical with that of a beneficiary of a trust, as to which see Restatement, Trusts, Section 173, and comment (a) thereto. This right may be exercised through a request to his fellow members as was done in this case and, if his request is refused, he may apply to the orphans' court for relief. Of course the

Mayor as a member of the Board should appoint competent experts.

The trusts involved amount to $93,724,299, only $321,-735 of which are in trusts inter vivos. It is perfectly clear, therefore, that the court below in dismissing the petition challenging the jurisdiction of the common pleas court, did not err with respect to the trusts inter vivos as it had jurisdiction over such trusts. But the great body of them lay within the control of the orphans' court and the Common Pleas Court of Philadelphia cannot direct an accounting, examination or audit with respect to trusts in the control of the orphans' court. As stated in *Mussleman's Appeal,* 65 Pa. 480, 486: "The court of common pleas, even as a court of equity, cannot interfere in a matter within the exclusive jurisdiction of the orphans' court."

We have considered the allegations of the petition, and deem the prayer meritorious and deserving of an immediate order. As the orphans' court has exclusive jurisdiction over the great body of these trusts, and the court of common pleas jurisdiction over only a small part, that complete justice may be done, this Court, as the head of the judicial system of the Commonwealth, will exercise its broad powers under the Act of 1836 to modify, reverse and amend decrees, as well as pursuant to the Act of 1722, 1 Sm. L., Sec. 13, conferring the powers of the Court of King's Bench. We will transfer this action to a court that is competent to grant full relief. The petition must not fall for inadvertency.

We order and direct that the entire record in Court of Common Pleas No. 2 of Philadelphia County be transferred to the Orphans' Court of Philadelphia County, it having jurisdiction over the trusts by will, as well as trusts inter vivos. It is further ordered that the Orphans' Court forthwith make an order permitting the petitioner to name, as he requests, three competent experts for the examination of the books, records, accounts and documents of the Board of City Trusts. It is fur-

ther ordered that the Orphans' Court issue all necessary processes and subpœnas to effectuate the execution of said order, to the end that the proposed examination may be full and complete.

The record is forthwith remitted to the Orphans' Court of Philadelphia County to the end that the above orders may be carried out.