## In re Wanamaker Institute of Industries

Before Van Dusen, P. J., Stearne, Sinkler, Klein, Bolger and Ladner, JJ.

*R. M. Remick*, of *Saul, Ewing, Remick & Saul*, for petitioner.

*Maurice W. Sloan*, contra.

LADNER, J., November 24, 1939.—The Spring Garden Institute, with the consent of the Attorney General, filed a petition under the Act of April 26, 1855, P. L. 328, as of the above caption, term, and number, under which was awarded a citation directed to the Wanamaker Institute of Industries, a corporation, and its officers and trustees to show cause "Why it and they should not file an account of the monies, assets, and property realized out of the residuary estate of Rudolph S. Walton and contributed by others for the purposes set forth in the will of the said Rudolph S. Walton."

An appearance was filed de bene esse for respondents as well as a petition under Equity Rule 29, incorporated by reference in our rule 15 (*E*), objecting to our jurisdiction. To this petition challenging our jurisdiction, an answer was filed by the Spring Garden Institute raising no issue of fact but averring in substance that we have jurisdiction. There is thus before us a single question of law, viz., whether under the facts pleaded in the original petition of the Spring Garden Institute this court has jurisdiction to entertain the proceedings attempted to be invoked under the Act of 1855, supra. If we have not jurisdiction, then the petition of the Spring Garden Institute must be dismissed.

In the petition of the Spring Garden Institute, the averments of which we must assume to be true for the purpose of this proceeding, the following facts appear:

The Spring Garden Institute is a charitable corporation incorporated by the Act of April 12, 1852, P. L. 700, for the purpose of promoting the moral and intellectual improvement of young persons. It has conducted and now conducts in Philadelphia a school in which boys, young men, and young women are instructed in trades, useful occupations, and other branches of common school education.

On November 10, 1900, Rudolph S. Walton died leaving a will probated in Philadelphia County by which, after a number of specific bequests, he devised the residue to his

executors and trustees to hold for his widow for life and upon her death to file an account and pay the residue to named trustees (item 12), "for the following uses and trusts: In trust . . . one year from the date of death of my beloved wife to pay over my said residuary estate unto the Board of Trustees . . . of the Bethany College now located in . . . Philadelphia; whether conducted under this title or not, provided said college is duly incorporated at that time and that the purpose of its organization and operation shall be to instruct and educate worthy and deserving poor boys, young men and young women in Bookkeeping, Writing, Telegraphy, Phonography, Typewriting, Dressmaking, Art Needle Work, Millinery and such other trades, useful occupations and employment or other branches of common school education as the trustees or managers of said college may find it possible to teach, etc."

At the death of the widow the final account of the executors and trustees was adjudicated by Judge Lamorelle, December 17, 1909, as of January term, 1902, no. 117, in which adjudication, after reciting that the Bethany College had been incorporated April 6, 1909, by Court of Common Pleas No. 1 under the title of Wanamaker Institute, the net balance of principal was awarded to Robert C. Ogden, Robert M. Coyle, Horace Petit, Joseph S. Bunting, and John Wanamaker (survivors of the seven trustees named in the will), in trust for the purposes hereinbefore specifically set forth. The said trustees subsequently, as authorized in the will, paid said net balance over to the Wanamaker Institute.

The will also provided in the next to the last paragraph of item 12: "Upon payment by my Trustees or their survivors unto the said Bethany College or its successor or to the Board of Trustees or Managers of a corporation to be formed in the event of the Bethany College, or its successor, not being in active or actual operation, of all my residuary estate in their hands at the time of said payment, I discharge and relieve my said trustees and

their survivors, their and each of their heirs, executors, administrators and assigns, of and from any and all personal or individual liability for and during the term of their trusteeship."

The Spring Garden petition then avers that the Wanamaker Institute of Industries conducted a school in accordance with the purposes set forth in the Walton will until 1932, when it "closed its school and abandoned the scheme of the charity for which it was organized and ceased to have as the purpose of its organization and operation, the instruction and education of worthy and deserving poor boys, young men and women as provided in the will of Rudolph S. Walton"; that the Wanamaker Institute, its officers and trustees, "now have in their possession certain monies, property and other assets realized out of the residuary estate of Rudolph S. Walton and contributed by others which are not being administered in accordance with the intent of the said testator and other said contributors". Averring that it (Spring Garden Institute) is desirous as well as equipped to carry into effect the intent of the said Rudolph S. Walton, it prays that this court "inquire into and ascertain what are the rights of the parties concerned in the premises, what balance of monies and other property now remain in possession of the Wanamaker Institute, its officers and trustees, and what disposition should be made thereof", and to award a citation directed to them, ordering them to show cause why they should not file an account "of all the monies, property and other assets realized out of the residuary estate of the said Rudolph S. Walton and contributed by others for the purposes set forth in the said Will of Rudolph S. Walton".

From this summary of the petition it is at once apparent that we are asked not to cite fiduciaries of an estate under our jurisdiction to account, for they were expressly discharged by the will itself from all further responsibility after they paid over (as they have) to the Wanamaker Institute (formerly the Bethany College),

the residue awarded to them for that purpose. The petition does not even purport to be filed in the Rudolph S. Walton Estate, but is a new and independent proceeding entitled "In the matter of Wanamaker Institute of Industries, a corporation". What we are asked to do is to "inquire", i. e., exercise a supervisory jurisdiction over affairs of a corporation to determine if it is carrying on its chartered purposes and to compel it to account for the funds which it has received, not only from trustees once under but now discharged from the jurisdiction of this court, but also funds *contributed by others.*

We are a court of limited jurisdiction, exercising only such powers as are conferred upon it by statute expressly or by necessary implication: Freihofer's Estate, 25 D. & C. 547, and cases therein cited by Judge Stearne. An appropriate statutory provision must therefore be pointed out as the basis of our jurisdiction. In essence this is a petition to supervise the affairs of a corporation. We have no such jurisdiction, for there is no statute such as the Act of June 16, 1836, P. L. 785, sec. 13, subdivision V, which confers on the common pleas court equity jurisdiction in "The supervision and control of all corporations other than those of a municipal character". See Hamilton et al. v. The John C. Mercer Home, 19 Dist. R. 169, 172, Sulzberger, P. J.

In our opinion this case is ruled by Watson's Estate, 314 Pa. 179. There a decedent directed the formation of a corporation to which she bequeathed her residuary estate for the purpose of founding and maintaining a home for indigent gentlewomen over the age of 65, which corporation was duly formed and the residue of the estate paid over to it. Some years later a petition was filed in the orphans' court averring that the directors of the home had failed to carry out the instructions of testatrix's will and praying for their removal. The Supreme Court held the orphans' court to be without jurisdiction for it was an attempt to have it regulate the internal management of a corporation. Nor could the petition be justified

on the theory of an exercise of jurisdiction over testamentary trustees because the bequest and the award thereunder was "to a charitable corporation, not to its directors as trustees for charitable uses. The gift was an outright one, and no trust was created by the will." The facts in that case are so similar to the instant case that we must regard it as a controlling authority, for there is no difference in substance between the prayer there to remove the directors and that here to remove from the control of the corporation its property, which comprises not only funds received from the Walton Estate but funds contributed by *"others"* as well.

The learned counsel for petitioner however urges upon us as statutory authority for his petition the Cy Pres Act of April 26, 1855, P. L. 328, sec. 10, as amended by the Act of May 23, 1895, P. L. 114, sec. 1, which reads:

"That no disposition of property heretofore or hereafter made for any religious, charitable, literary or scientific use, shall fail for want of a trustee, or by reason of the objects being indefinite, uncertain or ceasing, or depending upon the discretion of a last trustee, or being given in perpetuity or in excess of the annual value hereinbefore limited, but it shall be the duty of any orphans' court, or court having equity jurisdiction in the proper county, to supply a trustee, and by its decrees to carry into effect the intent of the donor or testator, so far as the same can be ascertained and carried into effect consistently with law or equity; for which purpose the proceedings shall be instituted by leave of the Attorney General of the Commonwealth, on the relation of any institution, association, corporation not for profit or individual, desirous of carrying such disposition into effect, and willing to become responsible for the costs thereof, subject to an appeal as in other cases in said courts respectively, and to be reviewed, reversed, affirmed or modified by the Supreme Court of this State; but if the objects of the trust be not ascertainable, or have ceased to exist . . .".

A superficial reading of this act might seem to justify the argument but a careful reading indicates its real purpose to be to prevent the failure of charitable trusts for the lack of a trustee, uncertainty or indefiniteness of the objects, etc. Should any such conditions arise then the court having "jurisdiction" *of the trust,* that is either the orphans' court if it be a testamentary trust, or a court of equity, if a trust be nontestamentary, shall by appropriate decree carry into effect the intent of the "donor" or the "testator." This act therefore does not *confer* jurisdiction on the courts named but grants to the appropriate court, which *may have* the jurisdiction of the matter, enlarged powers to deal with the situations described.

Such appears to have been its uniform interpretation for no case has been cited to us, nor have we been able to find any except the familiar ones in which the statute has been invoked upon accountings of trust funds or under the court's supervisory jurisdiction over trustees of a continuing trust.

The error of learned counsel for petitioner seems to arise from the failure to distinguish between an award to a corporation as a trustee and an outright award to a charitable corporation. In the larger sense, a gift to any church, charity, or hospital is a gift in trust, though the more accurate expression would be a gift for a charitable use, yet such a corporation receiving such a gift is not regarded as a technical trustee of the specific gift and need not account for the same, unless such a condition be attached thereto. Yet if such a charitable corporation does abandon operation or fail to carry out its charter purposes there is an appropriate remedy for such an abuse of its corporate purposes, either by action brought by the Commonwealth to oust it of its charter or by the common pleas court sitting in equity which has supervisory jurisdiction over corporations under the Act of 1836, supra: Hamilton et al. v. The John C. Mercer Home, supra.

There remains to be considered whether the amendment of June 26, 1931, P. L. 1384, to the Orphans' Court Act of June 7, 1917, P. L. 363, granting jurisdiction in "The control, removal, discharge, and settlement of accounts of trustees of trusts inter vivos", warrants our taking jurisdiction in this matter. In In re Stief et al., 32 D. & C. 289, and Shaffer's Estate, 21 D. & C. 90, Judge Van Dusen expressed our views when he said the act cited did not extend our jurisdiction to the whole subject of nontestamentary trusts, certainly not to those arising by operation of law, nor to those not requiring administration or distribution. In the instant case, the Wanamaker Institute is not in the accurate sense of the term a trustee inter vivos of the funds received by it for its corporate purposes, though it does hold them for a charitable use: Watson's Estate, supra. The visitorial power over such corporations is certainly not given to this court by the Act of 1931, supra.

Finally, it is argued that the recent case of Wilson, etc., v. Board of Directors of City Trusts et al., 324 Pa. 545, supports our jurisdiction. We do not think so. That case concerned the jurisdiction of the Board of City Trusts created by the Act of June 30, 1869, P. L. 1276, to administer property bequeathed or given to the city in trust for specific purposes, by donors or testators. It is therefore an agency erected by statute to act for the city as trustee to administer express trusts. The trusts so administered are continuing trusts and as such are well within the jurisdiction of this court to control and supervise trustees of trusts created either by wills or inter vivos. Of great significance is the statement appearing in the Board of City Trust case on page 552, viz., "Within its appointed sphere the jurisdiction of the orphans' court is complete and exclusive. It continues as long as the trust res is administered by the trustee, and ends when that res is delivered to the beneficiary or the ones entitled thereto by will: See *Watson's Estate*, 314 Pa. 179." Thus the Supreme Court has concisely pointed

414

out the distinction between the City Trust case and Watson's Estate, and that distinction is equally applicable here.

The petition of the Wanamaker Institute of Industries to set aside service of the citation, etc., is sustained and the petition of the Spring Garden Institute together with the citation allowed thereon is dismissed for lack of jurisdiction in this court to entertain the same.