## Coble v. Arnold

*Metzger, Wickersham & Knauss*, for plaintiff.

*Thomas H. Lane*, for defendant.

KREIDER, J., December 18, 1962.—Plaintiff, Clyde B. Coble, administrator d.b.n.c.t.a. of the estate of Bertha Garrity, and defendant, Carl H. Arnold, have presented to the court of common pleas of this county

a "Case Stated—in Ejectment." Plaintiff-administrator seeks possession of the only piece of real estate owned by decedent for the purpose of further administering her estate, the personalty being insufficient for the payment of the Pennsylvania Inheritance Tax and the expenses of decedent's funeral which was furnished by plaintiff. Defendant resists plaintiff's claim for possession asserting that he acquired a good and unimpeachable title to the premises at a sheriff's sale on a judgment entered against the devisee under decedent's will.

Bertha Garrity, a widow, died testate August 24, 1957. In her last will and testament she devised to her daughter, Jeannette C. Price, her real estate which consisted of a two and one-half story frame dwelling house known as 136 State Street, Middletown, Dauphin County. Jeannette C. Price was also appointed executrix but no account was filed by her. The funeral expenses of decedent in the amount of $685 and the Pennsylvania Inheritance Tax on her estate have not been paid nor have the fees of her counsel. After the orphans' court vacated her letters testamentary and removed her from office, the executrix left this jurisdiction and her present address is unknown.

On March 10, 1958, less than seven months after her mother's death, the executrix, Jeannette C. Price, alias Jeannette Price Love, gave her individual judgment exemption note for $2,500 to Security Builders and Contractors, Inc., payable one day after date and on the following day judgment was entered thereon. On July 31, 1958, this judgment was assigned to the Cumberland County National Bank and Trust Company. On July 31, 1958, execution was issued on the judgment and levy made August 12, 1958, on the real estate in question as the property of Jeannette C. Price, alias Jeannette Price Love, individually. Obviously, the execution and levy took place prior to the expiration of

one year after decedent's death which occurred August 24, 1957, as stated.

On September 4, 1958, the sheriff of Dauphin County, after due advertisement, sold the said property to Carl H. Arnold, defendant, for $3,200 and he has been in possession of the property since that time.

On January 5, 1959, upon petition presented to the Orphans' Court of Dauphin County by plaintiff, Clyde B. Coble, as an unpaid creditor, a citation was issued to Jeannette C. Price to show cause why she should not take possession of the real estate as executrix of her mother's estate and administer the same according to law for the purpose of paying the inheritance tax and decedent's funeral expenses as provided in section 501 of the Fiduciaries Act of April 18, 1949, P. L. 512, 20 PS §320.501. This citation was served on Jeannette C. Price by the sheriff on January 9, 1959, at her residence, 113 Washington Street, Harrisburg, Pennsylvania. No answer was filed to the citation and shortly after its issuance the executrix disappeared. Thereafter, plaintiff presented a petition to the Orphans' Court of Dauphin County for a citation to the executrix to show cause why she should not be removed from her office and why the letters testamentary granted to her should not be vacated. A citation was awarded by the orphans' court on January 5, 1961, and service ordered by publication after the sheriff was unable to make personal service. On April 19, 1961, the orphans' court revoked the letters testamentary previously granted to Jeannette C. Price and dismissed her as executrix of the estate of Bertha Garrity.

On May 31, 1961, letters of administration d.b.n.c.t.a. on the said estate were granted by the register of wills to Clyde B. Coble, plaintiff, as a preferred creditor of said estate. Through his counsel, the administrator has demanded that defendant either pay the funeral bill with interest and costs, the inheritance tax and the

other debts of decedent, if any, as well as a reasonable fee to counsel for the executrix, or surrender to him possession of the property to enable him to administer the estate as provided by law. Defendant has refused to surrender possession of the premises or to recognize the claim of plaintiff either as creditor or as administrator d.b.n.c.t.a.

Defendant contends that he has acquired a clear title to the real estate in question because title thereto became vested in Jeannette C. Price upon the death of her mother, Bertha Garrity, subject only to administration by her personal representative to protect the claims of creditors who had filed a written notice of their claims with the clerk of the orphans' court within one year after decedent's death, and that since no such claims were filed within that period, the real estate became free of claims thereafter.

Defendant relies upon section 732 of the Fiduciaries Act of 1949, as amended by section 5 of the Act of February 23, 1956, P. L. (1955) 1084, 20 PS §320.732 (b) (2). This section provides:

"Real Property. No claimant shall have any claim against real property conveyed by a personal representative in distribution at his own risk pursuant to subsection (a) hereof, *unless* such claimant, *within one year after the decedent's death*, files a written notice of his claim with the clerk. Such claim against real property shall expire at the end of five years after the decedent's death, unless within that time the personal representative files an account or the claimant files a petition to compel an accounting." *

Plaintiff, on the other hand contends, that since execution on the judgment entered *against the devisee* and the levy on the real estate were made *prior* to the expiration of one year after the death of decedent, the

---

* Italics throughout ours unless otherwise stated.

sheriff's sale conveyed to the purchaser nothing more than the interest of the devisee in her mother's estate which remained after the payment of decedent's debts and funeral expenses. Plaintiff also contends that he was under no duty to file a written claim for the funeral bill with the clerk of the orphans' court because the will of the decedent specifically directed the payment of the funeral expenses. Moreover, it is conceded that the executrix was represented by counsel and that "Clyde B. Coble gave a bill for the aforesaid funeral expenses to counsel for the aforesaid Executrix at some time after the grant of Letters to her."

It is also conceded that at all times since decedent's death it has been necessary for her personal representative to take possession of the real estate to pay the funeral expenses, the inheritance taxes due the Commonwealth and the expenses of administration of the estate.

The foregoing facts clearly reveal that this estate has been in the Orphans' Court of Dauphin County for the past five years. Section 301 of the Orphans' Court Act of August 10, 1951 P. L. 1163, 20 PS §2080.301, provides that the orphans' court shall have exclusive jurisdiction of:

"(1) The administration and distribution of the real and personal property of decedents' estates . . .

"(6) The appointment, control, settlement of the accounts of, removal and discharge of, . . . all fiduciaries of estates and trusts of which the court has jurisdiction. . . .

"(11) The construction of an administrative power as to real estate proposed to be exercised by a fiduciary subject to the jurisdiction of the orphans' court."

Section 302 of the act provides that:

"The orphans' court shall have concurrent jurisdiction of: (1) Title to Real Estate. The determination of the persons to whom the title to real estate of a dece-

dent . . . has passed by devise or descent . . . : *Provided,
That nothing herein* shall be *construed to restrict the
exclusive jurisdiction of the orphans' court to distribute
real estate* in an estate or trust within its jurisdiction."

Section 104 of the Fiduciaries Act of 1949, 20 PS
§320.104, provides:

"Legal title to all real estate of a decedent shall pass
at his death to his heirs or devisees, subject, however, to
all the powers granted to the personal representative
by this act and lawfully by the will and to all orders of
the court."

It will be noted that this section, however, applies
only to the "legal title". Under section 501, 20 PS
§320.501, it is provided that:

"A personal representative shall have the right to
and shall take possession of, maintain and administer
all the real and personal estate of the decedent, except
real estate occupied by an heir or devisee. He shall
collect the rents and income from each asset in his
possession until it is sold or distributed, and, during
the administration of the estate, shall have the right to
maintain any action with respect to it and shall make
all reasonable expenditures necessary to preserve
it. . . ."

The commission's comment with regard to real estate
states that:

". . . it is a distinct departure from existing Pennsyl-
vania law and is based on the premises that the per-
sonal representative except as stated should have the
duty as well as the right to control real estate until it is
sold or distributed by decree or until control is relin-
quished to the heir or devisee because it is not needed
for administration. The theory of the drafters has been
that the legal and equitable title to real estate passes to
heirs or devisees as heretofore, but that real estate
should be administered as personal property, with a
few minor exceptions when the nature of real estate

requires a different treatment. During administration the personal representative will have the same powers over real estate as he has over personal property except as the Act makes express provisions to the contrary."

The real estate in question was occupied by decedent at the time of her death and not by her daughter, the devisee. Under the circumstances, it was the duty of the executrix to collect the rents and income from her mother's homestead until it was sold or distributed. The executrix totally ignored her duty and suffered the real estate to be sold in execution on an individual judgment obtained against herself, well knowing that her mother's funeral expenses and the inheritance tax had not been paid.

In 2 Partridge-Remick, Pa. O. C. Practice, page 201, §15.02(b), it is stated:

"The powers and duties of a personal representative with respect to decedent's real estate continue until the discharge of the personal representative . . .; until the sale thereof . . . or until the distribution thereof, either at his own risk, under Section 732, or pursuant to an award thereof by the court, under Section 733 and/or 734 of the Act of 1949."

We think the execution and levy on decedent's real estate *prior* to the expiration of one year following her death to satisfy a judgment obtained against the devisee *individually* raises a serious question whether defendant Arnold acquired anything more at the sheriff's sale than the interest of the daughter-devisee in the surplusage of her mother's estate remaining after the payment of the debts and funeral expenses. Plaintiff vigorously contends that he had until the last day of the one year period following decedent's death to file his claim with the clerk of the orphans' court. Before that time expired, however, the real estate of decedent had been levied upon by the sheriff to satisfy a claim, not against decedent's estate, but against the devisee personally.

Some of the fundamental principles which must be considered in the case at bar were decided more than 100 years ago by our Supreme Court in Horner & Roberts v. Hasbrouck, 41 Pa. 169 (1861). There, in a scholarly opinion written by Mr. Justice Woodward it was said (p. 182):

"But, independently of all equities, it is insisted that the law has been settled in Pennsylvania to be as claimed by the plaintiff below; that the sheriff's sale of the heirship of Samuel divested the title of his ancestor. If the law be so, it is obvious that had Samuel been the only heir of his father, or had similar sheriff's sales been had against *each* of the *eight* heirs, *the Orphans' Court would have been stripped of its jurisdiction*, and the creditors of the decedent, instead of enjoying the fruits of a regular administration of their debtor's estate, would have been obliged to content themselves with such proceeds as the sheriff may have extorted from *fragmentary sales* of the several heirships."

At page 184, it was further stated:

". . . it is only the interest of the heir, and not the estate of the ancestor, which passes by a sheriff's sale on a judgment against the heir, . . .

"Granting that the authorities do insist on the general principle that judicial sales divest all liens where there is no fixed encumbrance like a widow's dower, it will be found that they all apply to sheriff's sales against alienees, or devisees, or heirs, before our modern legislation commenced in 1832. Since that time this court has never decided, so far as we remember, that a sheriff's sale of an heirship *ousts* the jurisdiction of the Orphans' Court in respect to the estate of the ancestor. Nor can such a decision be pronounced, for it *would make havoc of the system of distribution*, which the legislature, under the guidance of the codifiers, have provided. That system is compact, rational, and beneficent. It is best for creditors, as well as heirs.

"It was wise to commit the decedent's estate to the Orphans' Court *exclusively*, for the machinery of that court is *flexible*, and can be adapted to the exigencies of each case, so as to prevent sacrifice and loss. It is a statutory mode of conversion, and therefore displaces, necessarily, all others. It is the prescribed form of applying to decedents' estates the always accepted principle that lands are assets for payment of debts. It must have its course. And in a conflict between a sheriff's vendee under a judgment against an heir, and a purchaser at an Orphans' Court sale, the title of the latter must prevail."

In Seifert's Estate, 56 Lanc. 363 (1959), 9 Fiduc. Rep. 388, President Judge Bowman of the orphans' court granted the petition of an administratrix to acquire possession of real estate where almost eight years had expired after the death of the decedent, because it was necessary to obtain possession to preserve the property as an asset of the estate and to liquidate the same in order to pay the creditors of the decedent.

Plaintiff also contends that decedent's will specifically directed the payment of her funeral expenses. He says this constitutes a charge on the land of which defendant-purchaser at the sheriff's sale was bound to take notice. This requires an interpretation of the will and in our judgment is also within the exclusive jurisdiction of the Orphans' Court. In Presbyterian Church of Lewistown v. Ulsh, 28 D. & C. 2d 476 (1962), President Judge Sheely, specially presiding, dismissed a complaint in equity to obtain possession of real estate because the orphans' court had exclusive jurisdiction. What was there so succinctly stated by that learned jurist is applicable here (p. 481):

"It is clear, therefore, that *the whole subject matter of the present controversy comes within the exclusive* jurisdiction of the orphans' court over the administration and distribution of the real and personal property

of decedents' estates and over the settlement of the accounts of executors. It necessarily follows that the court of common pleas, sitting in equity, cannot step in and determine the distribution of the real estate or settle the accounts of the executors with relation thereto. The case comes within the exception to section 302 of the Orphans' Court Act, supra, relied upon by the plaintiff, that nothing therein should be construed to restrict the exclusive jurisdiction of the orphans' court to distribute real estate in an estate or trust within its jurisdiction."

Each of the parties in the instant case cites Brown, Executrix, v. Bailey, 84 D. & C. 269, 62 Dauph. 441 (1952). That was an action in ejectment in the court of common pleas brought by decedent's personal representative against defendant who had purchased the real estate from decedent's son who was in possession. Plaintiff-executrix stipulated that it was *not* necessary at the time of the conveyance for her as decedent's personal representative to take possession of the real estate and administer it to protect the rights of creditors *nor had the executrix petitioned the orphans' court* for permission so to do. Judge Neely, speaking for this court, held that the devisee's deed to the purchaser was good and we heartily agree with that conclusion for the law vests title in the devisee upon the death of decedent, subject to the right of decedent's personal representative to administer the real estate for *the protection of* creditors. The instant case is totally different. Here decedent's debts and funeral expenses have *not* been paid and it may well be that the personal representative should be permitted to take possession to protect the rights of claimants.

In the recent case of Trout v. Lukey, 402 Pa. 123 (1961), the Supreme Court of Pennsylvania reversed the lower court in a case involving a decedent's estate on the ground that a court of common pleas, even while

sitting as a court of equity, cannot interfere in a matter within the exclusive jurisdiction of the orphans' court. Mr. Justice Bok, speaking for the Supreme Court, said (p. 126):

"The jurisdiction of the Orphans' Court over the settlement, administration, and distribution of a decedent's estate is exclusive: Mauser v. Mauser, 326 Pa. 257 (1937), 192 A. 137; Thomas v. Johnson, supra, [356 Pa. 570].

"The court of common pleas, even as a court of equity, cannot interfere in a matter within the exclusive jurisdiction of the Orphans' Court: Wilson v. Board of Directors of City Trusts, 324 Pa. 545 (1936), 188 A. 588."

The decree of the lower court was vacated "on the ground of jurisdiction only" even though that question had not been raised by the parties in the court below or on appeal. See also Stahl, Attorney General v. Insurance Company of North America, 408 Pa. 483 (1962), Eagen, J., affirming sub. nom. Alpern, Attorney General v. Insurance Company of North America, 77 Dauph. 353 (1961).

And now, December 18, 1962, the "Case Stated—In Ejectment" presented to this court is dismissed without prejudice, however, to further proceedings in the orphans' court.